# Exhibit A

1  RICKY W. POON [SBN #177401]
   LAW OFFICES OF RICKY W. POON
2  2926 WEST VALLEY BLVD.
   ALHAMBRA, CALIFORNIA 91803
3  TEL: (626) 282-9797
   FAX: (626) 282-9733
4
   Attorney for Plaintiffs
5  Freya Ma and David Jichun Ma



FILED
Superior Court of California
County of Los Angeles

JAN 03 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
        Marlon Gomez

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                      COUNTY OF LOS ANGELES

9

10  FREYA MA and DAVID JICHUN MA,        )   CASE NO.:     BC688310
                                         )
11                Plaintiffs,            )
                                         )
12  vs.                                  )   PLAINTIFFS FREYA MA AND DAVID
                                         )   JICHUN MA'S COMPLAINT AGAINST
13  SHENGZHEN TANG aka SAM TANG, an      )   DEFENDANTS FOR:
    individual; BINXI LI, an individual, LIU )
14  QUIYAN, an individual, CHONGHAO TANG, )  1) BREACH OF WRITTEN CONTRACT;
    an individual, INTERUNITED INVESTMENT )  2) INTENTIONAL
15  USA CORP. dba METRO SUPERMARKET, a   )   MISREPRESENTATION;
    California Corporation; SHINGER XIYINGJIA ) 3) NEGLIGENT MISREPRESENTATION
16  USA INC. dba METRO SUPERMARKET, a    )   4) BREACH OF FIDUCIARY DUTY;
    California Corporation; OCM GROUP USA, )  5) CONVERSION;
17  INC., a California Corporation, CACA FOOD ) 6) ABUSE OF CONTROL;
    GROUP, INC., a California Corporation, THE ) 7) CORPORATE WASTE;
18  TANG DYNASTY LEGEND, INC. dba BBQ &  )   8) GROSS MANAGEMENT;
    SHABU LEGEND, and DOES 1-50, inclusive, ) 9) RIGHT OF INSPECTION;
19                                       )   10) ACCOUNTING;
                                         )   11) CONSPIRACY
20                Defendants.            )   12) CONSTRUCTIVE TRUST
                                         )
21                                       )
                                         )
22                                       )
                                         )
23                                       )
                                         )
24                                       )
                                         )
25  _____ )

26       Plaintiffs FREYA MA and DAVID JICHUN MA (hereinafter "Plaintiffs"), complain and
    allege the following:

                                    1
    _____
        PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

4/9

CIT/CASE:   BC688310
LEA/DEF#:

RECEIPT #: CCH621759028
DATE PAID: 01/03/18   10:14 AM
PAYMENT: $435.00                    310
RECEIVED:
        CHECK:                    $0.00
        CASH:                     $0.00
        CHANGE:                   $0.00
        CARD:                   $435.00

01/03/2018

## GENERAL ALLEGATIONS

1.      Plaintiff, FREYA MA, is now and was, at all times herein mentioned, an individual residing in the State of California, County of Los Angeles.

2.      Plaintiff, DAVID JICHUN MA, is now and was, at all times herein mentioned, an individual residing in the State of California, County of Los Angeles.

3.      Defendant, SHENGZHEN TANG ("TANG"), is now and was, at all times herein mentioned, an individual residing in the State of California, County of Los Angeles.

4.      Defendant, LIU QUIYAN ("QUIYAN"), is now and was, at all times herein mentioned, an individual residing in the State of California, County of Los Angeles.

5.      Defendant, CHONGHAO TANG ("CHONGHAO"), is now and was, at all times herein mentioned, an individual residing in the State of California, County of Los Angeles.

6.      Defendant, BINXI LI ("LI"), is now and was, at all times herein mentioned, an individual residing in the State of California, County of Los Angeles.

7.      Defendant, INTERUNITED INVESTMENT USA CORP., is now and was, at all times herein mentioned a California Corporation, operating within the County of Los Angeles.

8.      Defendant, SHINGER XIYINGJIA USA INC., is now and was, at all times herein mentioned a California Corporation, operating within the County of Los Angeles.

9.      Defendant, OCM GROUP USA, INC., is now and was, at all times herein mentioned a California Corporation, operating within the County of Los Angeles.

10.     Defendant, CACA FOOD GROUP, INC., is now and was, at all times herein mentioned a California Corporation, operating within the County of Los Angeles.

11.     Defendant, THE TANG DYNASTY LEGEND, INC., is now and was, at all times herein mentioned a California Corporation, operating within the County of Los Angeles.

12.     Defendants INTERUNITED INVESTMENT USA CORP. and SHINGER XIYINGJIA USA INC., is now and was, at all times herein mentioned doing business as METRO SUPERMARKET located at 4819 Temple City Blvd., Temple City, CA 91780.

13.     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of the Defendants sued herein was the agent and employee of each of the remaining

2

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

Defendants and was at all times acting within the purpose and scope of such agency and employment.

14.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

15.     At all times herein mentioned, Defendants, and each of them, were an owner, a co-owner, an agent, representative, partner, and/or alter ego of its Defendants, or otherwise acting on behalf of each and every remaining Defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent, representative, partner, and/or alter ego of its Defendants, with the full knowledge, permission and consent of each and every remaining Defendant, each Defendant having ratified the acts of the other Defendants.

16.     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, there existed a unity of interest and ownership between the Defendants and the non-corporate Defendants such that any individuality and separateness between said individual Defendants have ceased.  Plaintiffs are further informed and believes, and thereon alleges that if the acts of the corporate Defendant entities are treated as those of the entities alone, an inequitable result would follow.

17.     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants dominated and controlled one another; that a unity of interest and ownership existed between each of the Defendants; that each corporate defendant was a mere shell and conduit for the individual defendants; that each of the corporate defendants are inadequately capitalized; that defendants failed to abide by the formalities of corporate existence; that defendants failed to use assets as their own, and that recognizing the separate existence of any of the defendants would promote injustice.

18.     Plaintiffs are informed and believe and thereon alleges that, at all times herein mentioned, a unity of interest and ownership between the individual Defendants, DOES 1 through 100, and Defendants which are corporate Defendants, such that any individuality and separation between

3

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

the individual Defendants as alleged shareholders and the corporate Defendants have ceased such that any individuality and separation between the individual Defendants as alleged shareholders and the corporate Defendants are the alter egos of such individual Defendants in that Plaintiffs are informed and believes and thereon alleges that Defendants are responsible for some or all of the following acts and/or failures to act, among other things:  (1) commingling of personal funds and other assets of the individual Defendants and DOES 1 through 100, and the unauthorized diversion of corporate funds or assets to other than corporate uses; (2) the treatment by the individual Defendants and Does 1 through 100 of the assets of the corporation(s) as their and/or their own; (3) the failure to adequately capitalize the corporate Defendants and/or the total absence of corporate assets and under-capitalization to adequately meet the corporate Defendants' financial obligations, such as, among other things, the supply of purchased goods to Plaintiffs; (4) the use of the corporate Defendants as a mere shell, instrumentality, or conduit for a single venture or the businesses of the individual Defendants and the other individual DOE Defendants; and (5) the contracting with another with intent to avoid performance by use of the corporate Defendants as a corporate entity as a shield against personal liability, and/or the use of the corporate Defendants as a corporate entity as a subterfuge of illegal transactions.

19.    Plaintiffs are informed and believe, and upon such information and belief alleges, that each of the Defendants named herein and as DOES 1 through 100, inclusive, were and are in some manner responsible for the actions, acts and omissions herein alleged, and for the damage caused by the Defendants, and are, therefore, jointly and severally liable for the damages caused to Plaintiffs.

20.    Plaintiffs are informed and believe, and upon such information and belief alleges, that each of the Defendants including DOES 1 through 100, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

21.    Wherever appearing in this Complaint, each and every reference to Defendants or to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them,

4

named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

## BACKGROUND ALLEGATIONS

22.    In or about October 2011, Defendant Tang sought to invest in and establish a business in the United States for the purposes of obtaining an EB5-Immigrant Investor Visa Program, which allows eligible immigrant residents who invest at least $1 million to become lawful residents and obtain a green card.  Defendant Tang sought to open a supermarket to carry out his purpose of successfully completing his EB5 requirements.  Plaintiffs were previous owners and operators of a supermarket and possessed over twenty (20) years of retail experience.  Plaintiffs were familiar with third party vendors, food suppliers, supermarket equipment (air-conditioning systems, refrigeration systems, freezer systems, frozen food aisles, slicers to cut deli meats and fish, display cases for bakery and deli, cash register counts and thousands of item codes for the computer systems, etc.), the process of applying for and steps required to obtain licenses (liquor and beverage license, business license, retail license, fire department license, EBT food license, cigarette tobacco license, city permits, etc.), and overall logistics needed to run a profitable supermarket.

23.    On January 14, 2012, Plaintiffs and Defendant TANG entered into a written agreement to effectuate Defendant Tang's desire of becoming an owner of a supermarket in the United States to satisfy EB5 requirements.  (**See Exhibit 1**.)  Based on this agreement, Defendant TANG would invest $1 million USD to allow for the supermarket project to move forward and Defendant TANG would be the majority shareholder, becoming an 80% equity shareholder in the supermarket.  Plaintiffs would invest their time, business expertise, connections, supermarket experience, etc., in exchange for 20% equity in the supermarket.  Further, based on the written agreement, Plaintiffs were provided the option to obtain their 20% equity based on market valuation after 5 years from the onset of their agreement on January 14, 2012.

24.    Pursuant to the agreement entered into by Plaintiffs and Defendant TANG, Plaintiffs received shares of common stock – 20,000 shares out of the 100,000 shares issued.  (**See Exhibit**

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

**2.**)  On June 27, 2012, Plaintiffs and Defendant TANG had their January 14, 2012 agreement notarized.  (**See Exhibit 3**.)

25.     Once this agreement was entered, Plaintiffs began taking all steps necessary to transform a nonexistent business to becoming a fully operational supermarket, including but not limited to the following: obtain site lease, sign as personal guarantor for lease, site drawing, apply and obtain all license from city and state government, vetted and selected contractors to perform work needed for supermarket space, purchased supermarket equipment (air-conditioning systems, refrigeration systems, freezer systems, frozen food aisles, slicers to cut deli meats and fish, display cases for bakery and deli, cash register counts and thousands of item codes for the computer systems, etc.) at a much lower cost resulting in huge savings., Based on the Plaintiffs' goodwill with the landlord and vendors, plaintiffs were able to successfully start up a new supermarket.

26.     On May 4, 2013, the supermarket had its grand opening as the Metro Supermarket, located at 4819 Temple City Blvd., Temple City, CA 91780.  Following the Metro Supermarket becoming fully operational, Plaintiffs continued to provide services and work for Metro Supermarket.

27.     To date, despite numerous demands for Plaintiffs' equity, Plaintiffs have not received any compensation or money for their 20% equity in Metro Supermarket.

28.     In October 2015, unbeknownst to Plaintiffs, Defendant TANG continues to own and operate Metro Supermarket.  Defendant TANG fraudulently and surreptitiously deprived Plaintiffs of their ownership shares by unilaterally removing Plaintiffs' equity and shares of stock.  Based on information and belief, Defendant TANG now allegedly owns 35% of Metro Supermarket, Defendant LI and SHINGER XIYINGJIA USA INC. own 65% of Metro Supermarket, and Plaintiffs own 0% of Metro Supermarket.

29.     Defendants conspired and illegally transferred shares belonging to Plaintiffs, without ever providing Plaintiffs any compensation or money for their 20% equity in Metro Supermarket.

30.     Defendants, through their status as majority shareholders, have damaged the value of Plaintiff's ownership interest in INTERUNITED INVESTMENT USA CORP. dba METRO

6

1   SUPERMARKET through the following acts, among others: 1) converting corporate

2   money/profit to pay personal financial expenditures; 2) converting corporate money/profit to

3   fund a new, completely unrelated entity, THE TANG DYNASTY LEGEND, INC. dba as BBQ

4   & Shabu Legend; 3) converting corporate money/profit to pay for unrelated business

5   opportunities, reducing valuable assets to the detriment of Plaintiffs; 4) failing to inform minority

6   shareholders of business opportunities, including but not limited to offers to purchase, (5)

7   refusing to purchase Plaintiff's stock at a fair and reasonable rate; 6) converting corporate assets

8   by redistributing corporate shares unilaterally.  Plaintiffs continue to object to the actions taken

9   by Defendants, majority shareholders, and their agents. Plaintiffs remain a minority shareholder,

    but have been unable to safeguard the value of INTERUNITED INVESTMENT USA CORP.

10  dba METRO SUPERMARKET, and Plaintiffs' interest as minority shareholders are

11  compromised because of the bad acts of the majority shareholders, Defendants.

12              **FIRST CAUSE OF ACTION**

13           **BREACH OF WRITTEN CONTRACT**

14        **(Against All Defendants and DOES 1 to 100)**

15

16  31.    Plaintiffs re-allege and incorporates by reference, each and every allegation contained in

17  Paragraphs 1 through 30 of this Complaint, as though fully set forth herein.

18  32.    On January 14, 2012, Plaintiffs and Defendant TANG entered into a written agreement to

19  effectuate Defendant Tang's desire of becoming an owner of a supermarket in the United States

    to satisfy EB5 requirements.  **(See Exhibit 1.)**  Based on this agreement, Defendant TANG

20  would invest $1 million USD to allow for the supermarket project to move forward and

21  Defendant TANG would be the majority shareholder, becoming an 80% equity shareholder in

22  the supermarket.  Plaintiffs would invest their time, business expertise, connections, supermarket

23  experience, etc., in exchange for 20% equity in the supermarket.  Further, based on the written

24  agreement, Plaintiffs were provided the option to obtain their 20% equity based on market

25  valuation after 5 years from the onset of their agreement on January 14, 2012.

26  33.    Pursuant to the agreement entered into by Plaintiffs and Defendant TANG, Plaintiffs

    received shares of common stock – 20,000 shares out of the 100,000 shares issued. **(See Exhibit**

                                    7

    _____

        PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

**2.)** On June 27, 2012, Plaintiffs and Defendant TANG had their January 14, 2012 agreement notarized. **(See Exhibit 3.)**

34.     Pursuant to the agreement entered into by Plaintiffs and Defendant TANG, Plaintiff Jichun Ma "shall have a salary compensation of four thousand USD before tax (starting from the formal opening of the supermarket." **(See Exhibit 1.)**

35.     Plaintiffs performed all covenants, conditions and promises required by the written contract entered between Plaintiffs and Defendant TANG except for those obligations that Plaintiffs were prevented or excused from performing.

36.     To date, despite numerous demands for Plaintiffs' equity, Plaintiffs have not received any compensation or money for their 20% equity in Metro Supermarket. By failing to provide Plaintiffs their 20% equity based on the market valuation at any time following five years of their agreement, Defendants have clearly breached.

37.     From February 2014 to present, Defendants have only paid Plaintiff Jichun Ma a salary of $800 per month, which is $3,200 less than the $4,000 per month that was owed to Plaintiff Jichun Ma pursuant to the written contract entered between the parties. By failing to provide Plaintiff Jichun Ma a salary of $4,000 per month as stated in their written agreement, Defendants have clearly breached.

<u>**SECOND CAUSE OF ACTION**</u>

<u>**INTENTIONAL MISREPRESENTATION**</u>

**(Against All Defendants and DOES 1 to 100)**

38.     Plaintiffs re-alleges and incorporates by reference, each and every allegation contained in Paragraphs 1 through 37 of this Complaint, as though fully set forth herein.

39.     In or about October 2011, Defendant Tang sought to invest in and establish a business in the United States for the purposes of obtaining an EB5-Immigrant Investor Visa Program, which allows eligible immigrant residents who invest at least $1 million to become lawful residents and obtain a green card. Defendant Tang sought to open a supermarket to carry out his purpose of successfully completing his EB5 requirements. Plaintiffs were previous owners and operators of a supermarket and possessed over twenty (20) years of retail experience. Plaintiffs were familiar

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

with third party vendors, food suppliers, supermarket equipment (air-conditioning systems, refrigeration systems, freezer systems, frozen food aisles, slicers to cut deli meats and fish, display cases for bakery and deli, cash register counts and thousands of item codes for the computer systems, etc.), the process of applying for and steps required to obtain licenses (liquor and beverage license, business license, retail license, fire department license, EBT food license, cigarette tobacco license, city permits, etc.), and overall logistics needed to run a profitable supermarket.

40.     On January 14, 2012, Plaintiffs and Defendant TANG entered into a written agreement to effectuate Defendant Tang's desire of becoming an owner of a supermarket in the United States to satisfy EB5 requirements. (**See Exhibit 1**.) Based on this agreement, Defendant TANG would invest $1 million USD to allow for the supermarket project to move forward and Defendant TANG would be the majority shareholder, becoming an 80% equity shareholder in the supermarket. Plaintiffs would invest their time, business expertise, connections, supermarket experience, etc., in exchange for 20% equity in the supermarket. Further, based on the written agreement, Plaintiffs were provided the option to obtain their 20% equity based on market valuation after 5 years from the onset of their agreement on January 14, 2012.

41.     Pursuant to the agreement entered into by Plaintiffs and Defendant TANG, Plaintiffs received shares of common stock – 20,000 shares out of the 100,000 shares issued. (**See Exhibit 2**.) On June 27, 2012, Plaintiffs and Defendant TANG had their January 14, 2012 agreement notarized. (**See Exhibit 3**.)

42.     Once this agreement was entered, Plaintiffs began taking all steps necessary to transform a nonexistent business to becoming a fully operational supermarket, including but not limited to the following: obtain site lease, sign as personal guarantor for lease, site drawing, apply and obtain all license from city and state government, vetted and selected contractors to perform work needed for supermarket space, purchased supermarket equipment (air-conditioning systems, refrigeration systems, freezer systems, frozen food aisles, slicers to cut deli meats and fish, display cases for bakery and deli, cash register counts and thousands of item codes for the computer systems, etc.) at a much lower cost resulting in huge savings., Based on the Plaintiffs'

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

goodwill with the landlord and vendors, plaintiffs were able to successfully start up a new supermarket.

43.    On May 4, 2013, the supermarket had its grand opening as the Metro Supermarket, located at 4819 Temple City Blvd., Temple City, CA 91780.  Following the Metro Supermarket becoming fully operational, Plaintiffs continued to provide services and work for Metro Supermarket.

44.    To date, despite numerous demands for Plaintiffs' equity, Plaintiffs have not received any compensation or money for their 20% equity in Metro Supermarket.

45.    In October 2015, unbeknownst to Plaintiffs, Defendant TANG continues to own and operate Metro Supermarket.  Defendant TANG fraudulently and surreptitiously deprived Plaintiffs of their ownership shares by unilaterally removing Plaintiffs' equity and shares of stock.  Based on information and belief, Defendant TANG now allegedly owns 35% of Metro Supermarket, Defendant LI and SHINGER XIYINGJIA USA INC. own 65% of Metro Supermarket, and Plaintiffs own 0% of Metro Supermarket.

46.    Defendants conspired and illegally transferred shares belonging to Plaintiffs, without ever providing Plaintiffs any compensation or money for their 20% equity in Metro Supermarket.

47.    Defendants, through their status as majority shareholders, have damaged the value of Plaintiffs ownership interest in INTERUNITED INVESTMENT USA CORP. dba METRO SUPERMARKET through the following acts, among others: 1) converting corporate money/profit to pay personal financial expenditures; 2) converting corporate money/profit to fund a new, completely unrelated entity, THE TANG DYNASTY LEGEND, INC. dba as BBQ & Shabu Legend; 3) converting corporate money/profit to pay for unrelated business opportunities, reducing valuable assets to the detriment of Plaintiffs; 4) failing to inform minority shareholders of business opportunities, including but not limited to offers to purchase, (5) refusing to purchase Plaintiff's stock at a fair and reasonable rate; 6) converting corporate assets by redistributing corporate shares unilaterally.  Plaintiffs continue to object to the actions taken by Defendants, majority shareholders, and their agents. Plaintiffs remain a minority shareholder, but have been unable to safeguard the value of INTERUNITED INVESTMENT USA CORP.

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

dba METRO SUPERMARKET, and Plaintiffs' interest as minority shareholders are compromised because of the bad acts of the majority shareholders, Defendants.

48.    The fraudulent representations made by Defendants were in fact false. When Defendants made these fraudulent misrepresentations, Defendants knew them to be false, and these misrepresentations were made with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in the manner herein alleged.

49.    Plaintiffs, at the time these misrepresentations were made by Defendants, was ignorant of the falsity of Defendants' fraudulent misrepresentations, and believed them to be true.  In reliance on these fraudulent misrepresentations, Plaintiffs was induced to act.  Had Plaintiffs known the true and actual facts, Plaintiffs would not have taken such actions. Plaintiffs' reliance on Defendants' fraudulent misrepresentations were justified.

50.    As a proximate result of Defendants' fraud and deceit and the facts herein alleged, Plaintiffs has suffered damages in an amount according to proof at time of trial.

51.    In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice, and Plaintiffs are entitled to punitive damages in the amount to be shown according to proof at the time of trial.

## THIRD CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (Against All Defendants and DOES 1 to 100)

52.    Plaintiffs re-alleges and incorporates by reference, each and every allegation contained in Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

53.    In or about October 2011, Defendant Tang sought to invest in and establish a business in the United States for the purposes of obtaining an EB5-Immigrant Investor Visa Program, which allows eligible immigrant residents who invest at least $1 million to become lawful residents and obtain a green card.  Defendant Tang sought to open a supermarket to carry out his purpose of successfully completing his EB5 requirements.  Plaintiffs were previous owners and operators of a supermarket and possessed over twenty (20) years of retail experience.  Plaintiffs were familiar with third party vendors, food suppliers, supermarket equipment (air-conditioning systems,

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

refrigeration systems, freezer systems, frozen food aisles, slicers to cut deli meats and fish, display cases for bakery and deli, cash register counts and thousands of item codes for the computer systems, etc.), the process of applying for and steps required to obtain licenses (liquor and beverage license, business license, retail license, fire department license, EBT food license, cigarette tobacco license, city permits, etc.), and overall logistics needed to run a profitable supermarket.

54.     On January 14, 2012, Plaintiffs and Defendant TANG entered into a written agreement to effectuate Defendant Tang's desire of becoming an owner of a supermarket in the United States to satisfy EB5 requirements.  (**See Exhibit 1**.)  Based on this agreement, Defendant TANG would invest $1 million USD to allow for the supermarket project to move forward and Defendant TANG would be the majority shareholder, becoming an 80% equity shareholder in the supermarket.  Plaintiffs would invest their time, business expertise, connections, supermarket experience, etc., in exchange for 20% equity in the supermarket.  Further, based on the written agreement, Plaintiffs were provided the option to obtain their 20% equity based on market valuation after 5 years from the onset of their agreement on January 14, 2012.

55.     Pursuant to the agreement entered into by Plaintiffs and Defendant TANG, Plaintiffs received shares of common stock – 20,000 shares out of the 100,000 shares issued.  (**See Exhibit 2**.)  On June 27, 2012, Plaintiffs and Defendant TANG had their January 14, 2012 agreement notarized.  (**See Exhibit 3**.)

56.     Once this agreement was entered, Plaintiffs began taking all steps necessary to transform a nonexistent business to becoming a fully operational supermarket, including but not limited to the following: obtain site lease, sign as personal guarantor for lease, site drawing, apply and obtain all license from city and state government, vetted and selected contractors to perform work needed for supermarket space, purchased supermarket equipment (air-conditioning systems, refrigeration systems, freezer systems, frozen food aisles, slicers to cut deli meats and fish, display cases for bakery and deli, cash register counts and thousands of item codes for the computer systems, etc.) at a much lower cost resulting in huge savings., Based on the Plaintiffs'

12

goodwill with the landlord and vendors, plaintiffs were able to successfully start up a new supermarket.

57.    On May 4, 2013, the supermarket had its grand opening as the Metro Supermarket, located at 4819 Temple City Blvd., Temple City, CA 91780.  Following the Metro Supermarket becoming fully operational, Plaintiffs continued to provide services and work for Metro Supermarket.

58.    To date, despite numerous demands for Plaintiffs' equity, Plaintiffs have not received any compensation or money for their 20% equity in Metro Supermarket.

59.    In October 2015, unbeknownst to Plaintiffs, Defendant TANG continues to own and operate Metro Supermarket.  Defendant TANG fraudulently and surreptitiously deprived Plaintiffs of their ownership shares by unilaterally removing Plaintiffs' equity and shares of stock.  Based on information and belief, Defendant TANG now allegedly owns 35% of Metro Supermarket, Defendant LI and SHINGER XIYINGJIA USA INC. own 65% of Metro Supermarket, and Plaintiffs own 0% of Metro Supermarket.

60.    Defendants conspired and illegally transferred shares belonging to Plaintiffs, without ever providing Plaintiffs any compensation or money for their 20% equity in Metro Supermarket.

61.    ' Defendants, through their status as majority shareholders, have damaged the value of Plaintiff's ownership interest in INTERUNITED INVESTMENT USA CORP. dba METRO SUPERMARKET through the following acts, among others: 1) converting corporate money/profit to pay personal financial expenditures; 2) converting corporate money/profit to fund a new, completely unrelated entity, THE TANG DYNASTY LEGEND, INC. dba as BBQ & Shabu Legend; 3) converting corporate money/profit to pay for unrelated business opportunities, reducing valuable assets to the detriment of Plaintiffs; 4) failing to inform minority shareholders of business opportunities, including but not limited to offers to purchase, (5) refusing to purchase Plaintiff's stock at a fair and reasonable rate; 6) converting corporate assets by redistributing corporate shares unilaterally.  Plaintiffs continue to object to the actions taken by Defendants, majority shareholders, and their agents. Plaintiffs remain a minority shareholder, but have been unable to safeguard the value of INTERUNITED INVESTMENT USA CORP.

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

dba METRO SUPERMARKET, and Plaintiffs' interest as minority shareholders are compromised because of the bad acts of the majority shareholders, Defendants.

62.    When Defendants made these misrepresentations, they made them without reasonable grounds for believing them to be true.  Moreover, these misrepresentations were made with the intent to induce Plaintiffs to rely on the misrepresented material facts and act in the manner herein alleged.

63.    Plaintiffs, at the time these misrepresentations were made by Defendants, was ignorant of the falsity of Defendants' misrepresentations, and believed them to be true.  In reliance on these misrepresentations, Plaintiffs was induced to act.  Had Plaintiffs known the true and actual facts, Plaintiffs would not have taken such action. Plaintiffs' reliance on Defendants' fraudulent misrepresentations were justified.

## FOURTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

### (Against All DEFENDANTS and DOES 1-100)

64.    Plaintiffs re-alleges and incorporates by reference, each and every allegation contained in Paragraphs 1 through 63 of this Complaint, as though fully set forth herein.

65.    As a majority shareholder, Defendants owe Plaintiffs, a minority shareholder, to act in the best interest of the not according to Defendants' own self interests. In California, majority, or controlling shareholders owe fiduciary duties to minority shareholders to use their ability to control the corporation in a fair, just and equitable manner, and majority shareholders and/or directors may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority. Any use to which majority shareholders and/or directors put the corporation or any use of their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business.  As a majority shareholder, Defendants also had a fiduciary duty of fidelity and no self-dealing.

66.    In or about October 2011, Defendant Tang sought to invest in and establish a business in the United States for the purposes of obtaining an EB5-Immigrant Investor Visa Program, which

14

allows eligible immigrant residents who invest at least $1 million to become lawful residents and obtain a green card. Defendant Tang sought to open a supermarket to carry out his purpose of successfully completing his EB5 requirements. Plaintiffs were previous owners and operators of a supermarket and possessed over twenty (20) years of retail experience. Plaintiffs were familiar with third party vendors, food suppliers, supermarket equipment (air-conditioning systems, refrigeration systems, freezer systems, frozen food aisles, slicers to cut deli meats and fish, display cases for bakery and deli, cash register counts and thousands of item codes for the computer systems, etc.), the process of applying for and steps required to obtain licenses (liquor and beverage license, business license, retail license, fire department license, EBT food license, cigarette tobacco license, city permits, etc.), and overall logistics needed to run a profitable supermarket.

67.     On January 14, 2012, Plaintiffs and Defendant TANG entered into a written agreement to effectuate Defendant Tang's desire of becoming an owner of a supermarket in the United States to satisfy EB5 requirements. (**See Exhibit 1**.) Based on this agreement, Defendant TANG would invest $1 million USD to allow for the supermarket project to move forward and Defendant TANG would be the majority shareholder, becoming an 80% equity shareholder in the supermarket. Plaintiffs would invest their time, business expertise, connections, supermarket experience, etc., in exchange for 20% equity in the supermarket. Further, based on the written agreement, Plaintiffs were provided the option to obtain their 20% equity based on market valuation after 5 years from the onset of their agreement on January 14, 2012.

68.     Pursuant to the agreement entered into by Plaintiffs and Defendant TANG, Plaintiffs received shares of common stock – 20,000 shares out of the 100,000 shares issued. (**See Exhibit 2**.) On June 27, 2012, Plaintiffs and Defendant TANG had their January 14, 2012 agreement notarized. (**See Exhibit 3**.)

69.     Once this agreement was entered, Plaintiffs began taking all steps necessary to transform a nonexistent business to becoming a fully operational supermarket, including but not limited to the following: obtain site lease, sign as personal guarantor for lease, site drawing, apply and obtain all license from city and state government, vetted and selected contractors to perform

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

work needed for supermarket space, purchased supermarket equipment (air-conditioning systems, refrigeration systems, freezer systems, frozen food aisles, slicers to cut deli meats and fish, display cases for bakery and deli, cash register counts and thousands of item codes for the computer systems, etc.) at a much lower cost resulting in huge savings., Based on the Plaintiffs' goodwill with the landlord and vendors, plaintiffs were able to successfully start up a new supermarket.

70.     On May 4, 2013, the supermarket had its grand opening as the Metro Supermarket, located at 4819 Temple City Blvd., Temple City, CA 91780.  Following the Metro Supermarket becoming fully operational, Plaintiffs continued to provide services and work for Metro Supermarket.

71.     To date, despite numerous demands for Plaintiffs' equity, Plaintiffs have not received any compensation or money for their 20% equity in Metro Supermarket.

72.     In October 2015, unbeknownst to Plaintiffs, Defendant TANG continues to own and operate Metro Supermarket.  Defendant TANG fraudulently and surreptitiously deprived Plaintiffs of their ownership shares by unilaterally removing Plaintiffs' equity and shares of stock.  Based on information and belief, Defendant TANG now allegedly owns 35% of Metro Supermarket, Defendant LI and SHINGER XIYINGJIA USA INC. own 65% of Metro Supermarket, and Plaintiffs own 0% of Metro Supermarket.

73.     Defendants conspired and illegally transferred shares belonging to Plaintiffs, without ever providing Plaintiffs any compensation or money for their 20% equity in Metro Supermarket.

74.     Defendants, through their status as majority shareholders, have damaged the value of Plaintiff's ownership interest in INTERUNITED INVESTMENT USA CORP. dba METRO SUPERMARKET through the following acts, among others: 1) converting corporate money/profit to pay personal financial expenditures; 2) converting corporate money/profit to fund a new, completely unrelated entity, THE TANG DYNASTY LEGEND, INC. dba as BBQ & Shabu Legend; 3) converting corporate money/profit to pay for unrelated business opportunities, reducing valuable assets to the detriment of Plaintiffs; 4) failing to inform minority shareholders of business opportunities, including but not limited to offers to purchase, (5)

16

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

refusing to purchase Plaintiff's stock at a fair and reasonable rate; 6) converting corporate assets by redistributing corporate shares unilaterally. Plaintiffs continue to object to the actions taken by Defendants, majority shareholders, and their agents. Plaintiffs remain a minority shareholder, but have been unable to safeguard the value of INTERUNITED INVESTMENT USA CORP. dba METRO SUPERMARKET, and Plaintiffs' interest as minority shareholders are compromised because of the bad acts of the majority shareholders, Defendants.

75.     As described in detail above, by using corporate assets for reasons which are outside the scope of Metro Supermarket, Defendants breached these fiduciary duties which were owed to Plaintiffs. Defendant Tang violated his duty to not profit from his official position or alleged majority status at the expense of Plaintiffs, the only other shareholders.

76.     As a result of these breaches of fiduciary duty, Plaintiffs have been damaged in an amount to be proven at trial.

77.     Also, since Defendant Tang has engaged in these breaches of fiduciary duty with intent and malice, with the specific and preconceived design to self-deal to benefit himself and have the Plaintiffs pay for his self-dealing, pursuant to Section 3294 of the California Civil Code, Plaintiffs are entitled to an award of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION

## CONVERSION

### (Against All DEFENDANTS and DOES 1-100)

78.     Plaintiffs re-allege and incorporates by reference, each and every allegation contained in Paragraphs 1 through 77 of this Complaint, as though fully set forth herein.

79.     At all times herein mentioned, Plaintiffs were, and still is entitled to their rightful possession of their 20% equity of Metro Supermarket, which is currently in the custody and control of Defendants.

80.     Based on the allegations set forth herein, Defendants took unlawful control of Plaintiffs property, substantially interfered with Plaintiffs' right to property, and have assuredly converted Plaintiffs' property.

17

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

81.    To date, despite numerous demands for Plaintiffs' equity, Plaintiffs have not received any compensation or money for their 20% equity in Metro Supermarket.

82.    Between the time of Defendants' conversion of the above-mentioned property to their own use and the filing of this action, Plaintiffs have been required to expend time and money in pursuit of the converted property, further damaging Plaintiffs.

83.    The aforementioned acts of Defendants, and each of them, were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages in the amount to be shown according to proof at time of trial.

## SIXTH CAUSE OF ACTION

## ABUSE OF CONTROL

## (Against All DEFENDANTS and DOES 1-100)

84.    Plaintiffs re-allege and incorporates by reference, each and every allegation contained in Paragraphs 1 through 83 of this Complaint, as though fully set forth herein.

85.    Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence of INTERUNITED INVESTMENT USA CORP. dba METRO SUPERMARKET, for which they are legally responsible.

86.    As a direct and proximate result of Defendants' abuse of control, Plaintiffs have sustained significant damages. As a direct and proximate result of the Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, Plaintiffs has sustained and continues to sustain significant damages.

87.    Plaintiffs have no adequate remedy at law.

## SEVENTH CAUSE OF ACTION

## CORPORATE WASTE

## (Against All DEFENDANTS and DOES 1-100)

88.    Plaintiffs re-allege and incorporates by reference, each and every allegation contained in Paragraphs 1 through 84 of this Complaint, as though fully set forth herein.

18

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

89.    As a result of the improprieties alleged herein, and by failing to properly consider the interests of Plaintiffs, Defendants have caused INTERUNITED INVESTMENT USA CORP. dba METRO SUPERMARKET to waste valuable corporate assets and incur costs.  As a result of the waste of corporate assets, the Defendants are liable to Plaintiffs.

90.    Plaintiffs have no adequate remedy at law.

### EIGHTH CAUSE OF ACTION
### GROSS MISMANAGEMENT
### (Against All DEFENDANTS and DOES 1-100)

91.    Plaintiffs re-allege and incorporates by reference, each and every allegation contained in Paragraphs 1 through 90 of this Complaint, as though fully set forth herein.

92.    By their actions alleged herein, the Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business in a manner consistent with the operations of a publicly held corporation.

93.    As a direct and proximate result of Defendants' gross mismanagement, Plaintiffs have sustained significant damages.

94.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

95.    Plaintiffs have no adequate remedy at law.

### NINTH CAUSE OF ACTION
### RIGHT OF INSPECTION
### (Against All DEFENDANTS and DOES 1-100)

96.    Plaintiffs re-allege and incorporates by reference, each and every allegation contained in Paragraphs 1 through 95 of this Complaint, as though fully set forth herein.

97.    Plaintiffs have lawfully demanded of a proper inspection of the books.

19

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

98.    Defendants have refused and continue to refuse the Plaintiffs' lawful inspection rights that are retained by Defendants.

99.    Plaintiffs have no adequate remedy at law.

### TENTH CAUSE OF ACTION

### ACCOUNTING

### (Against All DEFENDANTS and DOES 1-100)

100.    Plaintiffs re-allege and incorporates by reference, each and every allegation contained in Paragraphs 1 through 99 of this Complaint, as though fully set forth herein.

101.    The amount of money due from Defendants to Plaintiffs are unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and payments made from Defendants.

102.    As a result of Defendants' misconduct, Plaintiffs have been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted.

103.    Plaintiffs demand an accounting be made of all payments made by the Defendants, including, without limitation, the dates of the payments, the amounts of the payments, the value of the payments, the recipients of the payments, as well as the disposition of any proceeds received by the Defendants.

### ELEVENTH CAUSE OF ACTION

### CONSPIRACY

### (Against All DEFENDANTS and DOES 1-100)

104.    Plaintiffs re-allege and incorporates by reference, each and every allegation contained in Paragraphs 1 through 103 of this Complaint, as though fully set forth herein.

20

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

105.    In committing the wrongful acts alleged herein, the defendants have pursued, or joined in the pursuit of, a common course of conduct, and acted in concert with and conspired with one another, in furtherance of their common plan or design.

106.    In addition to the wrongful conduct herein alleged, the Defendants further aided and abetted and/or assisted each other in breach of their respective duties as herein alleged.

107.    Defendants' conduct as alleged above were willful, wanton, malicious, oppressive, and were undertaken with the intent to defraud Plaintiffs, and justify the awarding of exemplary and punitive damages in an amount to be proven at trial.

## TWELFTH CAUSE OF ACTION
## CONSTRUCTIVE TRUST
### (Against All DEFENDANTS and DOES 1-100)

108.    Plaintiffs re-allege and incorporates by reference, each and every allegation contained in Paragraphs 1 through 107 of this Complaint, as though fully set forth herein.

109.    As a result of the acts alleged herein, Plaintiffs have a right for the return of their monies because it was illegally authorized and used by the Defendants

110.    As a proximate result of the Defendants, fraudulent misrepresentations and otherwise wrongful conduct as alleged herein, Plaintiffs have been damaged in an amount to be proved at trial.

111.    By reason of the fraudulent and otherwise wrongful manner in which the Defendants or any of them, obtained their alleged right, claim, or interest in and to the property, Defendants have no legal or equitable right, claim or interest therein, but, instead, Defendants are involuntary trustees holding said property and profits therefrom in constructive trust for Plaintiffs.

21

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that judgment be entered in its favor on each of its causes of action, respectively against each Defendant, and DOES 1-100, inclusively, jointly and severally, as follows:

**FIRST CAUSE OF ACTION FOR BREACH OF WRITTEN CONTRACT**

1. For general damages according to proof at trial;
2. For reasonable attorney fees according to proof;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court may deem proper.

**SECOND CAUSE OF ACTION FOR INTENTIONAL MISREPRESENTATION**

1. For general damages according to proof at trial;
2. For special damages according to proof at trial;
3. For punitive damages according to proof at trial;
4. For reasonable attorney fees according to proof;
5. For costs of suit incurred herein; and
6. For such other and further relief as the Court may deem proper.

**THIRD CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**

1. For general damages according to proof at trial;
2. For special damages according to proof at trial;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court may deem proper.

**FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY**

1. For general damages according to proof at trial;
2. For special damages according to proof at trial;
3. For punitive damages according to proof at trial;
4. For reasonable attorney fees according to proof;
5. For costs of suit incurred herein; and

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

6. For such other and further relief as the Court may deem proper.

**FIFTH CAUSE OF ACTION FOR CONVERSION**

1. For the value of the property converted in the sum of 20% of Metro Supermarket's value;

2. For interest at the legal rate on the foregoing sum pursuant to Section 3336 of the Civil Code;

3. For damages for the proximate and foreseeable loss resulting from Defendants' conversion according to proof at trial;

4. For damages for time and money properly expended in pursuit of the converted property according to proof at trial;

5. For punitive damages according to proof at trial;

6. For reasonable attorney fees according to proof;

7. For costs of suit incurred herein; and

8. For such other and further relief as the Court may deem proper.

**SIXTH CAUSE OF ACTION FOR ABUSE OF CONTROL**

1. For general damages according to proof at trial;

2. For special damages according to proof at trial;

3. For punitive damages according to proof at trial;

4. For reasonable attorney fees according to proof;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court may deem proper.

**SEVENTH CAUSE OF ACTION FOR CORPORATE WASTE**

1. For general damages according to proof at trial;

2. For special damages according to proof at trial;

3. For punitive damages according to proof at trial;

4. For reasonable attorney fees according to proof;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court may deem proper.

23

### EIGHTH CAUSE OF ACTION FOR GROSS MISMANAGEMENT

1. For general damages according to proof at trial;
2. For special damages according to proof at trial;
3. For punitive damages according to proof at trial;
4. For reasonable attorney fees according to proof;
5. For costs of suit incurred herein; and
6. For such other and further relief as the Court may deem proper.

### NINTH CAUSE OF ACTION FOR RIGHT OF INSPECTION

1. For general damages according to proof at trial;
2. For special damages according to proof at trial;
3. For punitive damages according to proof at trial;
4. For reasonable attorney fees according to proof;
5. For costs of suit incurred herein; and
6. For such other and further relief as the Court may deem proper.

### TENTH CAUSE OF ACTION FOR ACCOUNTING

7. For general damages according to proof at trial;
8. For special damages according to proof at trial;
9. For punitive damages according to proof at trial;
10. For reasonable attorney fees according to proof;
11. For costs of suit incurred herein; and
12. For such other and further relief as the Court may deem proper.

### ELEVENTH CAUSE OF ACTION FOR CONSPIRACY

1. For general damages according to proof at trial;
2. For special damages according to proof at trial;
3. For punitive damages according to proof at trial;
4. For reasonable attorney fees according to proof;
5. For costs of suit incurred herein; and
6. For such other and further relief as the Court may deem proper.

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

**TWELFTH CAUSE OF ACTION FOR CONSTRUCTIVE TRUST**

1. For general damages according to proof at trial;

2. For special damages according to proof at trial;

3. For punitive damages according to proof at trial;

4. For reasonable attorney fees according to proof;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court may deem proper.

Dated: January 1, 2018                         LAW OFFICES OF RICKY W. POON

                                               By: _____
                                                   Ricky W. Poon
                                                   Attorney for Plaintiffs

PLAINTIFFS FREYA MA AND DAVID JICHUN MA'S COMPLAINT

Exhibit 1.

合作协议书

甲方：唐声振（TAN SHENGZHENG）　　　　乙方：马积春 （DAVID JICHUN MA）

刘辉亚 （FREYA LIU MA ）

4819 Temple City Blvd　　　　　　　　　　4819 Temple City Blvd
Temple City，CA 91780　　　　　　　　　　Temple City，CA 91780

甲乙双方本着平等互利的原则，在"投资原成发超市计划书"（为本协议书的附件）未尽事宜的基础上，经双方友好协商后一致同意在原成发超市旧址 4819 TEMPLE CITY BLVD, TEMPLE CITY,CA 91780 USA 合作投资一个在加州政府登记注册的股份有限公司。公司登记名称为"US MAX FOOD CORP."中文名暂定为"美国佳味食品有限公司"。公司名下组建一个全新的生活超市：DBA "TEMPLE CITY SUPERMARKET"。甲乙双方并一致同意以超市为基地发展食品，肉类，酒类等中美进出口贸易业务。为此，甲乙双方就具体合作业务达如下协议：

1. 合作方式：

甲方负责为所需资金的资金投资方，投资总额为 100 万美元，包括超市全面装修，购置设备,仓储货物 和流动资金。甲方占公司总合作项目 80%的股份。甲方担任公司董事长。

乙方负责超市的经营管理和美国出口贸易的货源业务方，乙方以智慧财产权和市场资源技术股为无形资产入股。乙方占公司总合作项目 20%的股份。乙方（马继春）担任公司总经理。

甲乙双方一致同意合作关系至少维持 10 年，5 年之内不分股，不拆股，如果公司发展需要增资，甲乙方按同比例股比享有优先认购权。按照公司会计成本核算后，公司每年进行二次分红，以当期实现利润的 50%进行分配，余下留存公司发展资金。5 年后如甲方或乙方要改变合作关系，甲乙双方同意将所有合作经营的项目按市值计算股价价值，则甲乙双方按照资本股本比例即甲方股比 80%，乙方股比 20%进行分配。

如甲方单方面在 10 年之内任何时候要收回乙方的经营权，甲方同意乙方可以及时分配到所有合作经营项目市值的 20%的股份，如因合作经营期限内乙方在日常经营管理中自主决定发生了重大经营性错误，使公司造成重大经营损失，乙方将不享受当年分红，但不影响股份分配权益。如果乙方在 5 年之内任何时候要求退出公司，乙方同意放弃 20%的股份权益，但如因身体健康原因除外，并不影响股份分配权益。

Shengzhen Tang
1/14/2012

David Ma.
Fruyama
1/14/2012

2. 合作项目和业务范围：

甲乙双方同意以经营普通生活超市所需项目为主，以及通过利用超市进货渠道优势发展进出口贸易，包括出口美国出产的酒类，肉类，婴儿奶粉等安全食品到中国，进口中国出产的干货，杂货，副食品到美国市场。

3. 甲乙双方同意双方共同享有合作项目的管理权。双方共同享有合作项目资源，甲方负责公司的重大决策，乙方负责主持超市的日常工作和美国出口业务的货源供应工作，甲方对乙方主持的日常工作和人事安排进行共同商量决议。

4. 甲方同意总经理（马积春）的工资酬劳为税前每月四千美元（以超市正式开业算起），每周工作六天，每天工作八小时。每年 15 天带薪假期。

5. 本协议未尽事宜，双方本着互相尊重，互谅互让的原则另行协议解决。

6. 为保障甲乙双方的合法权益，此协议书在公证处登记并签字之日起生效。本协议书一式二份，双方各持

一份中文版正本件为凭，英文版本为副本件。

甲方签字：                                          乙方签字

*Shangzhen Tang*

唐声振 Sam Tang                                    马积春 David Ma, C3073513
                                                   刘辉亚 Freya L Ma  C5729079      1/13/2012

1/13/2012

修改日期 1/14/2012

**Abacus Consulting Services**
401 N. Garfield Ave. Ste 1, Alhambra, CA 91801 Tel: 626-487-8909 Fax: 626-282-9252
Website: http://www.certifiedchinesetranslation.com/ Email: info@certifiedchinesetranslation.com

## CERTIFICATION OF TRANSLATION
### (Certified by Courts)

This is to certify under the penalty of perjury that I am a court certified interpreter in California with license number #301138 and I am fluent in Chinese (Mandarin) and English languages, that the document(s) listed as

### Partnership Agreement

is (are) complete and accurate translations of the originals to the best of my ability and knowledge.

I certify under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

Signed on December 27, 2017 in Los Angeles, California, USA

Samuel Shen Chong
Federal Court Registered Interpreter (US District Courts)
CA Court Certified Interpreter (License No. 301138), New York Court Certified Interpreter
ATA (American Translators Association) Associate # 243264
Abacus Consulting Services
401 N. Garfield Ave.
#1
Alhambra, CA 91801, USA
Tel: 626-487-8909
Fax: 626-282-9252

**Partnership Agreement**

Party A:  Shengzhen Tang (TANG SHENGZHEN)    Party B:  Jichun Ma (DAVID JICHUN MA)

Huiya Liu (FREYA LIU MA)

4819 Temple City Blvd                           4819 Temple City Blvd

Temple City, CA 91780                          Temple City, CA 91780

Based on the principles of equality and a mutually beneficial relationship and the unsettled affairs of "Business Plan for Investing in the Original Temple City Ranch Market" (as an attachment for this agreement), both Party A and Party B, after friendly discussions, decide to partner and invest in the original "Temple City Ranch Market", with the original address at 4819 TEMPLE CITY BLVD, TEMPLE CITY, CA 91780 USA, a supermarket and a fast food restaurant, and a limited company has been registered at the California Secretary of State.   The registered name of the company is "Interunited Investment USA CORP."   The registered capital of the company is USD$300,000, and the actual investment in place is USD$1 million. The Chinese name of the new supermarket to be established under the company is "Yonglong Supermarket", and its English name registered at the California Secretary of State is DBA "METRO SUPERMARKET".     Both Party A and Party B agree to develop US and China import and export trading business of food products, meet products, alcoholic beverage products using the supermarket as a base.

1. Method of Partnership

Party A is to be the investor for the funds needed, with a total investment amount of USD$1 million, including a comprehensive remodeling, purchase of equipment, storage of goods, and liquidity of capital. Party A shall have 80% of the shares of the total investment partnership project.   Party A shall be the chairman of the company.

Party B is to be responsible for the operation and management of the supermarket, as well as the party in charge of sourcing products for US export trades.   Party B obtains shares of the company through intangible properties such as intellectual property rights and market resources and technologies, as well as many years of business experiences operating the supermarket business.   Party B shall have 20% of the shares of the total investment partnership project.   Party B shall be the general manager of the company.

Both Party A and Party B agree that the partnership is to last at least 10 years, and there will be no division or split of shares within the 10 years.   If the company needs additional capital for its development, then both Party A and Party B will have the preferential subscription rights based on the same ratio of shares owned.   The company will conduct two dividend distributions every year after cost accounting by the accountant of the company in order to realize distribution of 50% of the profits of the period, and the remainder will be used for the company's development fund.   After 5 years, should Party A or Party B wish to change the partnership relationship, both Party A and Party B shall agree to calculate the value of the shares based on the market value of the operated projects, that is, both Party A and Party B shall be distributed based on the ratio of the capital shares, i.e. Party A 80%, and Party B 20%.

Should Party A wishes to take back the operation rights of Party B unilaterally any time within the 5 years, Party A agrees that Party B may be allocated 20% of the shares of the market value of all the operated

Should Party A wishes to take back the operation rights of Party B unilaterally any time within the 5 years, Party A agrees that Party B may be allocated 20% of the shares of the market value of all the operated projects.    Should Party B voluntarily requests to exit the company at any time within the 5 years, then Party B agrees to give up the 20% of the share interests.    Within the partnership operating period, should there occurred major operational mistakes during Party B's daily operational management due to Party B's arbitrary decisions without discussions with Party A, causing major operational losses of the company, then Party B shall not receive dividends of the year, but it shall not affect the ratio of the share interests and the rights of distribution.

2. Partnership Project and Scope of Business

Both Party A and Party B agree to mainly operate a general supermarket, and to develop import and export trade using the advantages of the purchase channels of the supermarket.    The business would include exporting alcoholic drinks, meat products, infant powders and other products having good food safety that are produced in the US to China, and importing dry foods, grocery products, and non-staple foods as well as other products that are produced in China to the US market.

3. Both Party A and Party B agree that they shall jointly share the management rights of the project. Both parties shall jointly share the sources of the partnered project.    Party A is responsible for the major decisions of the company, and Party B is responsible for the daily works of the supermarket as well as the product supplies of the US export business.    Party A may participate, discuss and decide jointly with Party B for the daily operations and personnel arrangement of Party B.

4. Party A agrees that the general manager (Jichun Ma) shall have a salary compensation of four thousand USD before tax (starting from the formal opening of the supermarket), with a workload of eight hours per day, six days per week.    There will be 15 days of paid vacations every year.

5. For issues unmentioned in this agreement, both parties may resolve them separately based on the principles of mutual respect and mutual understanding.

6. In order to ensure the legal rights of both Party A and Party B, this agreement becomes effective on the date of execution and notary.    This agreement has one form, two copies, with each party holding one copy of original Chinese version, and the English version shall be the duplicate copy.

Party A's signature:                                          Party B's signature:
[signature: Tang, Shengzhen]                        [signature: -Jichun Ma]
---------------------------                              ----------------------------------------
Tang SHENG ZHEN,    Sam Tang                  Jichun Ma      David Ma C3073513
Date: 1/13/12                                              Date: 1/13/12


Modified: 1/14/2012                                    [signature: Freya Ma]
                                                                  ----------------------------
                                                                  Huiya Liu      Freya L M    C5729079
                                                                  Modified: 1/14/2012

Exhibit 2.

Certificate No. _____ 2 _____ For _____

Issued to _____ Freya Ma _____

From whom transferred _____

Dated _____ , _____

| NO. ORIGINAL CERTIFICATE | NO. ORIGINAL SHARES | SHARES TRANSFERRED |
|---|---|---|
| | | |

Received Certificate No. _____
for _____
this _____ day of _____ , _____

Dated _____ , _____

NUMBER
2

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA
OCTOBER 19, 2011

SHARES
20,000

## Interunited Investment USA Corp.

AUTHORIZED 100,000 SHARES COMMON STOCK

**This Certifies that** _____ Freya Ma _____ is the

registered holder of _____ Twenty Thousand ********************** _____ Shares

of the above named Corporation transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.

**In Witness Whereof,** the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed this _____ 6th _____ day of _____ March _____ A.D. 2012

Freya Ma
SECRETARY

Shengzhen Tang
PRESIDENT

2011 Attorneys Corporation Service, Inc.

# Exhibit 3.


## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Los Angeles_ }

On _June 27, 2012_ before me, _Sophia Yang Notary Public_
    Date                                    Here Insert Name and Title of the Officer

personally appeared _Shengzhen Tang, Freya L. Ma_
                                      Name(s) of Signer(s)
_and Jichun Ma_

**SOPHIA YANG**
Commission # 1822500
Notary Public - California
Los Angeles County
My Comm Expires Dec 10, 2012

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
                        Signature of Notary Public

Place Notary Seal Above

─────────────── **OPTIONAL** ───────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Cooperation Agreement (in Chinese)_

Document Date: _6/27/12_                     Number of Pages: _2_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____          Signer's Name: _____

☐ Corporate Officer — Title(s): _____          ☐ Corporate Officer — Title(s): _____
☐ Individual                                                              ☐ Individual
☐ Partner — ☐ Limited ☐ General                         ☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact                                                    ☐ Attorney in Fact
☐ Trustee                                                                  ☐ Trustee
☐ Guardian or Conservator                                     ☐ Guardian or Conservator
☐ Other: _____                                                  ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____          Signer Is Representing: _____

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                Item #5907

合作协议书

甲方：唐声振（TANG SHENGZHEN）

乙方：马积春 （DAVID JICHUN MA）

刘辉亚 （FREYA LIU MA ）

4819 Temple City Blvd
Temple City，CA 91780

4819 Temple City Blvd
Temple City，CA 91780

　　甲乙双方本着平等互利的原则，在"投资原成发超市计划书"（为本协议书的附件）未尽事宜的基础上，经双方友好协商后甲乙双方决定在原"成发超市"旧址 4819 TEMPLE CITY BLVD, TEMPLE CITY,CA 91780 USA 合作投资生活超市和快餐厅，并已在加州州政府登记注册为股份有限公司。公司登记名称为"Interunited Investment USA CORP."。公司登记注册资金为 30 万美元，实际投资到位资金为 100 万美元。公司名下组建的全新生活超市中文名为"永隆超市"，英文名在加州州政府登记为 DBA"METRO　SUPERMARKET"。甲乙双方并一致同意以超市为基地发展食品类，肉类，酒类等中美进出口贸易业务。为此，甲乙双方就具体合作业务达成如下协议：

1. 合作方式：

　　甲方负责为所需资金的资金投资方，投资总额为 100 万美元，包括超市全面装修，购置设备, 仓储货物 和流动资金。甲方占公司总投资合作项目 80%的股份。甲方担任公司董事长。

　　乙方负责超市的经营管理和美国出口贸易的货源业务方，乙方以智慧财产权和市场资源技术与多年经营超市业务经验为无形资产入股。乙方占公司总投资合作项目 20%的股份。乙方担任公司总经理。

　　甲乙双方一致同意合作关系至少维持 5 年，5 年之内不分股，不拆股，如果公司发展需要增资，甲乙双方按同比例股比享有优先认购权。按照公司会计成本核算后，公司每年进行二次分红，以当期实现利润的 50%进行分配，余下留存公司发展资金。5 年后如甲方或乙方要改变合作关系，甲乙双方同意将所有合作经营的项目按市值来计算股份价值，则甲乙双方按照资本股本比例即甲方股比 80%，乙方股比 20%进行分配。

　　如果甲方单方面在 5 年之内任何时候要收回乙方的经营权，甲方同意乙方可以及时分配到所有合作经营项目市值的 20%的股份；如果乙方在 5 年之内任何时候自请提出要求退出公司，乙方同意放弃 20%的股份权益。如因合作经营期限内乙方在日常经营管理中在未和甲方商量的情况下自主决定发生了重大经营性错误，使公司造成重大经营损失，乙方将不享受当年分红，但不影响股份股比和分配权益。如果乙方因身体健康原因不得不退出公司管理权，甲方同意此将不影响乙方的股份分配权益。

2. 合作项目和业务范围：

甲乙双方同意以经营普通生活超市所需项目为主，以及通过利用超市进货渠道优势发展进出口贸易，业务包括出口美国出产的酒类，肉类，婴儿奶粉等安全食品到中国，进口中国出产的干货类，杂货类，副食品类等产品到美国市场。

3. 甲乙双方同意双方共同享有合作项目的管理权。双方共同享有合作项目资源，甲方负责公司的重大决策，乙方负责主持超市的日常工作和美国出口业务的货源供应工作，甲方对乙方主持的日常工作和人事安排可参与共同商量与决议。

4. 甲方同意总经理（马积春）的工资酬劳为税前每月四千美元（以超市正式开业算起），每周工作六天，每天工作八小时。每年 15 天带薪假期。

5. 本协议未尽事宜，双方本着互相尊重，互谅互让的原则另行协议解决。

6. 为保障甲乙双方的合法权益，此协议书在公证处登记并签字之日起生效。本协议书一式二份，双方各持 一份中文版正本件为凭，英文版本为副本件。

甲方签字：                                    乙方签字

Tang SHENGZHEN   唐声振                      Freya L Ma   刘辉亚

日期：___6/27/12___                          日期：___6/27/12___

                                            David Jichun Ma   马积春

                                            日期：___6/27/12___

**Abacus Consulting Services**
401 N. Garfield Ave. Ste 1, Alhambra, CA 91801 Tel: 626-487-8909 Fax: 626-282-9252
Website: http://www.certifiedchinesetranslation.com/ Email: info@certifiedchinesetranslation.com

## CERTIFICATION OF TRANSLATION
### (Certified by Courts)

This is to certify under the penalty of perjury that I am a court certified interpreter in California with license number #301138 and I am fluent in Chinese (Mandarin) and English languages, that the document(s) listed as

### Partnership Agreement

is (are) complete and accurate translations of the originals to the best of my ability and knowledge.

I certify under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

Signed on December 27, 2017 in Los Angeles, California, USA

Samuel Shen Chong
Federal Court Registered Interpreter (US District Courts)
CA Court Certified Interpreter (License No. 301138), New York Court Certified Interpreter
ATA (American Translators Association) Associate # 243264
Abacus Consulting Services
401 N. Garfield Ave.
#1
Alhambra, CA 91801, USA
Tel: 626-487-8909
Fax: 626-282-9252

## Partnership Agreement

Party A: Shengzhen Tang (TANG SHENGZHEN)    Party B:  Jichun Ma (DAVID JICHUN MA)

Huiya Liu (FREYA LIU MA)

4819 Temple City Blvd                                      4819 Temple City Blvd

Temple City, CA 91780                                    Temple City, CA 91780

Based on the principles of equality and a mutually beneficial relationship and the unsettled affairs of "Business Plan for Investing in the Original Temple City Ranch Market" (as an attachment for this agreement), both Party A and Party B, after friendly discussions, decide to partner and invest in the original "Temple City Ranch Market", with the original address at 4819 TEMPLE CITY BLVD, TEMPLE CITY, CA 91780 USA, a supermarket and a fast food restaurant, and a limited company has been registered at the California Secretary of State.   The registered name of the company is "Interunited Investment USA CORP."   The registered capital of the company is USD$300,000, and the actual investment in place is USD$1 million. The Chinese name of the new supermarket to be established under the company is "Yonglong Supermarket", and its English name registered at the California Secretary of State is DBA "METRO SUPERMARKET".     Both Party A and Party B agree to develop US and China import and export trading business of food products, meet products, alcoholic beverage products using the supermarket as a base.

1. Method of Partnership

Party A is to be the investor for the funds needed, with a total investment amount of USD$1 million, including a comprehensive remodeling, purchase of equipment, storage of goods, and liquidity of capital. Party A shall have 80% of the shares of the total investment partnership project.   Party A shall be the chairman of the company.

Party B is to be responsible for the operation and management of the supermarket, as well as the party in charge of sourcing products for US export trades.   Party B obtains shares of the company through intangible properties such as intellectual property rights and market resources and technologies, as well as many years of business experiences operating the supermarket business.   Party B shall have 20% of the shares of the total investment partnership project.   Party B shall be the general manager of the company.

Both Party A and Party B agree that the partnership is to last at least 5 years, and there will be no division or split of shares within the 5 years.   If the company needs additional capital for its development, then both Party A and Party B will have the preferential subscription rights based on the same ratio of shares owned.   The company will conduct two dividend distributions every year after cost accounting by the accountant of the company in order to realize distribution of 50% of the profits of the period, and the remainder will be used for the company's development fund.   After 5 years, should Party A or Party B wish to change the partnership relationship, both Party A and Party B shall agree to calculate the value of the shares based on the market value of the operated projects, that is, both Party A and Party B shall be distributed based on the ratio of the capital shares, i.e. Party A 80%, and Party B 20%.

Should Party A wishes to take back the operation rights of Party B unilaterally any time within the 5 years, Party A agrees that Party B may be allocated 20% of the shares of the market value of all the operated

Should Party A wishes to take back the operation rights of Party B unilaterally any time within the 5 years, Party A agrees that Party B may be allocated 20% of the shares of the market value of all the operated projects.   Should Party B voluntarily requests to exit the company at any time within the 5 years, then Party B agrees to give up the 20% of the share interests.   Within the partnership operating period, should there occurred major operational mistakes during Party B's daily operational management due to Party B's arbitrary decisions without discussions with Party A, causing major operational losses of the company, then Party B shall not receive dividends of the year, but it shall not affect the ratio of the share interests and the rights of distribution.

2. Partnership Project and Scope of Business

Both Party A and Party B agree to mainly operate a general supermarket, and to develop import and export trade using the advantages of the purchase channels of the supermarket.   The business would include exporting alcoholic drinks, meat products, infant powders and other products having good food safety that are produced in the US to China, and importing dry foods, grocery products, and non-staple foods as well as other products that are produced in China to the US market.

3. Both Party A and Party B agree that they shall jointly share the management rights of the project. Both parties shall jointly share the sources of the partnered project.   Party A is responsible for the major decisions of the company, and Party B is responsible for the daily works of the supermarket as well as the product supplies of the US export business.   Party A may participate, discuss and decide jointly with Party B for the daily operations and personnel arrangement of Party B.

4. Party A agrees that the general manager (Jichun Ma) shall have a salary compensation of four thousand USD before tax (starting from the formal opening of the supermarket), with a workload of eight hours per day, six days per week.   There will be 15 days of paid vacations every year.

5. For issues unmentioned in this agreement, both parties may resolve them separately based on the principles of mutual respect and mutual understanding.

6. In order to ensure the legal rights of both Party A and Party B, this agreement becomes effective on the date of execution and notary.   This agreement has one form, two copies, with each party holding one copy of original Chinese version, and the English version shall be the duplicate copy.

Party A's signature:
[signature: Tang, Shengzhen]
------------------------------------

Tang SHENG ZHEN,      Shengzhen Tang
Date: 6/27/12

Party B's signature:
[signature: Freya Ma]
---------------------------

Freya L Ma      Huiya Liu
Date: 6/27/12


[signature: Jichun Ma]
---------------------------

David Jichun Ma      Jichun Ma
Date: 6/27/12

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, ar number, and address):*<br>Ricky W. Poon. Esq. [SBN 177401]<br>Law Offices of Ricky W. Poon<br>2926 West Valley Boulevard<br>Alhambra, CA 91803<br>TELEPHONE NO.: (626) 282-9797   FAX NO.: (626) 282-9733<br>ATTORNEY FOR *(Name):* Freya Ma and David Jichun Ma | FOR COURT USE ONLY<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>JAN 03 2018<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By_____ Deputy<br>Marion Gomez |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME:
Freya Ma et al. v. Shengzhen Tang et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited    ☐ Limited<br>(Amount        (Amount<br>demanded     demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter    ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **BC688310**<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☑ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 12
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 28, 2017

Ricky W. Poon, Esq.
_____    ▶ _____
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

| SHORT TITLE: Freya Ma et al. v. Shengzhen Tang et al. | CASE NUMBER: BC688310 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

| SHORT TITLE: Freya Ma et al. v. Shengzhen Tang et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☑ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, ②, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: Freya Ma et al. v. Shengzhen Tang et al. | | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

| SHORT TITLE: Freya Ma et al. v. Shengzhen Tang et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: <br> ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: <br> 4819 Temple City Blvd. |
|---|---|

| CITY: <br> Temple City | STATE: <br> CA | ZIP CODE: <br> 91780 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: _December 28, 2017_

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

Ricky W. Poon

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.