1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ARAMIC LLC, et al.,                      Case No.  21-cv-09585-AMO

8                   Plaintiffs,

9         v.                                  **ORDER GRANTING DEFENDANTS'**
                                              **MOTION TO STRIKE AND MOTION**
10   REVANCE THERAPEUTICS, INC., et al.,      **TO DISMISS**

11                  Defendants.               Re: Dkt. Nos. 91, 92

12

13          This is a securities fraud case about the U.S. Food and Drug Administration's review of a

14   drug developed by Revance Therapeutics, Inc. ("Revance").  Before the Court are Defendants'

15   motion to strike a declaration attached as an exhibit to Plaintiffs' second amended complaint

16   ("SAC") and Defendants' motion to dismiss Plaintiffs' SAC.  The matters are fully briefed and

17   suitable for decision without oral argument.  *See* Civil L.R. 7-6.  Having read the papers filed by

18   the parties and carefully considered their arguments and the relevant legal authority, the Court

19   hereby **GRANTS** both motions for the following reasons.

20   **I.      BACKGROUND**

21          Plaintiffs Aramic LLC and Tang Family Investor Group (collectively, "Lead Plaintiffs")

22   are stockholders of Defendant Revance Therapeutics, Inc., a biotechnology company that develops

23   and sells skin treatment drugs.[1]  SAC ¶ 2.  Revance sought U.S. Food and Drug Administration

24   ("FDA") approval for DaxibotulinumtoxinA ("DAXI"), an injectable drug used to smooth frown

25

26   _____

27   [1] As it must, the Court accepts Plaintiffs' allegations in the SAC as true and construes the
     pleadings in the light most favorable to them.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519
28   F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

1    lines.  SAC ¶¶ 2, 4.  Plaintiffs seek to represent purchasers of Revance stock between August 5,

2    2021 and October 15, 2021 (the "class period").[2]  SAC ¶ 1.

3        Drug developers like Revance that seek FDA approval must submit to the FDA a Biologics

4    License Application ("BLA").  SAC ¶ 4.  Review of the BLA typically involves inspection of the

5    drug manufacturing facility by the FDA to evaluate company compliance with Current Good

6    Manufacturing Practices ("cGMP") regulations, assess readiness for commercial manufacturing,

7    ensure conformance to the submitted application, and ensure the integrity of data submitted with

8    the BLA.  SAC ¶ 4.  Following an inspection, the FDA may then issue a Form 483 with

9    observations of potential non-compliance with cGMP regulations.  SAC ¶ 10.  The company then

10   has fifteen days to respond.  SAC ¶ 89.  If the FDA does not approve a BLA, it issues a Complete

11   Response Letter ("CRL") explaining why the FDA did not approve the drug.  SAC ¶ 21.

12       After years of developing DAXI, Revance announced its submission of a BLA for the drug

13   on November 25, 2019, and stated that it anticipated potential FDA product approval at the end of

14   2020.  SAC ¶¶ 6, 60.  After delays due to COVID-19, the FDA's pre-approval inspection of the

15   manufacturing facility was completed on July 2, 2021.  SAC ¶ 7.  The FDA subsequently issued

16   Revance a Form 483, which contained five "inspectional observations."  SAC ¶ 10.  The first two

17   observations focused on the deterioration of Revance's working cell banks ("WCBs") (cell tissues

18   extracted from a repository to produce drug substance and product) and Revance's new WCB not

19   being fully qualified and being a different manufacturing process than proposed in the BLA.  SAC

20   ¶¶ 74-87.  The remaining three observations concerned lack of oversight of outsourced activities

21   for the quality control unit, lack of indicators of process performance, and lack of a "quality

22   agreement" in place with a third-party facility.  SAC ¶ 88.

23       Revance provided a written response to the Form 483 in July 2021.  SAC ¶ 90.  The

24   response explained that it had enough drug substance from a qualified WCB to support

25   commercial production of DAXI.  SAC, Ex. C (Form 483 Response) at 10.  Revance also

26   explained that it planned to qualify the new WCB, and believed that qualification was a "post

27

28   ──────────────────
     [2] Plaintiffs previously sought to represent individuals who purchased stock between November 25, 2019 and October 15, 2021.  ECF 58 at 6.

approval activity." *Id.*  To that end, Revance stated that it "fully understands that the current WCB aged and our new WCB will not be fully qualified at the licensure.  However, we have a fully functional [redacted] that can last for more than [redacted] as well as [drug substance] inventory to support [drug product] production through [redacted].  Given that supply shortage is not a concern, Revance proposes to submit a post approval application for the WCB qualification package per approved protocol once available. . . [.]" *Id*. at 10-11.  Additionally, Revance disagreed with the FDA's observation that it was using a different manufacturing process than that proposed for licensure.  *Id.* at 7.

To address the remaining observations, Revance executed a quality agreement with a third-party facility on July 16, 2021, adjusted the way it calculated percentage yield, and amended its record-keeping details and photo clarity.  SAC, Ex. C at 12-14, 17-18.  On August 5, 2021, Revance issued a press release stating that the FDA initiated its pre-approval inspection in June and that Revance anticipated approval of DAXI in 2021.  SAC ¶ 103.  On October 15, 2021, the FDA issued a CRL denying Revance's BLA for DAXI.  SAC ¶ 115.  On March 8, 2022, Revance resubmitted its BLA.  SAC ¶ 122.  In September 2022, following the issuance of another Form 483 in July 2022, the FDA approved DAXI.  SAC ¶¶ 125-126.

Plaintiffs filed this securities class action on December 10, 2021, against Defendants Mark Foley, Tobin Schilke, and Abhay Joshi ("Individual Defendants") and Revance (collectively, "Defendants").  ECF 1.  Plaintiffs filed their first amended complaint on November 7, 2022, which the Court dismissed with leave to amend on April 2, 2024.  ECF 86.  On May 2, 2024, Plaintiffs filed the operative SAC, alleging that certain statements Defendants made during the class period regarding the timing and likelihood of FDA approval of DAXI were false or misleading in violation of Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act").  SAC ¶¶ 217-32.  On May 28, 2024, Defendants filed a motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, ECF 92, as well as a motion to strike the declaration of Suzanne Sensabaugh that Plaintiffs attached to the SAC, ECF 91.

//

1    **II.    LEGAL STANDARD**

2        A complaint must contain "a short and plain statement of the claim showing that the

3    pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Federal Rule of Civil Procedure 12(b)(6) allows

4    a defendant to move to dismiss a complaint for failing to state a claim upon which relief can be

5    granted.  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

6    cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

7    *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6)

8    motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

9    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a

10   plaintiff pleads "factual content that allows the court to draw the reasonable inference that the

11   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In

12   reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as

13   true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v.*

14   *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, courts do not

15   "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

16   unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

17       Plaintiffs in securities fraud cases must satisfy both the pleading requirements of Federal

18   Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  *In re*

19   *VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  Rule 9(b) requires that

20   claims alleging fraud must "state with particularity the circumstances constituting fraud . . . ."

21   Fed. R. Civ. P. 9(b).  The PSLRA mandates that "the complaint shall specify each statement

22   alleged to have been misleading, [and] the reason or reasons why the statement is misleading."

23   15 U.S.C. § 78u-4(b)(1)(B).  The PSLRA further requires that the complaint "state with

24   particularity facts giving rise to a strong inference that the defendant acted with the required state

25   of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007) (quoting 15 U.S.C.

26   § 78u-4(b)(2)(A)).  A plaintiff must thus allege that "the defendant[] made false or misleading

27   statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings*, 704

28   F.3d at 701 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)).

United States District Court
Northern District of California

1    III.    **DISCUSSION**

2        A.    **Request for Judicial Notice**

3        Courts are typically limited to the contents of the complaint when considering a motion to

4    dismiss but may take judicial notice of facts that are "not subject to reasonable dispute."  Fed. R.

5    Evid. 201(b).  Courts may consider documents incorporated into the complaint by reference,

6    *Tellabs*, 551 U.S. at 322, and take judicial notice of documents on which complaints necessarily

7    rely, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), publicly available financial

8    documents such as SEC filings, *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049,

9    1064 n.7 (9th Cir. 2008), and publicly available articles or other news releases of which the market

10   was aware, *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).  The

11   Court may not assume the truth of an incorporated document "if such assumptions only serve to

12   dispute facts in a well-pleaded complaint."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

13   1003 (9th Cir. 2018).

14       Defendants seek judicial notice of 11 exhibits.  ECF 94 at 2.  Defendants contend that eight

15   of the exhibits – Exhibits 2-3 and 6-11 – are "extensively referenced in the SAC or otherwise form

16   the basis of Plaintiffs' claims" and thus are incorporated by reference in the SAC.  *Id.* at 3.  These

17   exhibits include press releases, SEC filings, conference call and investor presentation transcripts,

18   and documents submitted to the FDA.  *Id.*  Plaintiffs agree that the 11 exhibits are incorporated by

19   reference, but argue the Court may not assume the truth of disputed facts within the documents.

20   ECF 100 at 10.  The Court agrees with the parties, and takes judicial notice of these exhibits, and

21   does not assume the truth of disputed facts in those exhibits.  *See Khoja*, 899 F.3d at 1003.

22       Defendants also seek judicial notice of Exhibit 5, a publicly available FDA guidance

23   document.  Because the document is accessible on the FDA's website as of the date of this order,

24   *see* https://www.fda.gov/media/109615/download, the document's "accuracy cannot reasonably be

25   questioned," making it subject to judicial notice.  Fed. R. Evid. 201(b).  Thus, the Court judicially

26   notices Exhibit 5.  *Immanuel Lake v. Zogenix, Inc.*, No. 19-CV01975-RS, 2020 WL 3820424, at

27   *5 (N.D. Cal. Jan. 27, 2020) ("[C]ourts routinely take judicial notice of [ ] FDA guidance

28   documents, many of which also appear on the FDA's public website.") (citation omitted).

United States District Court
Northern District of California

1    Finally, Plaintiffs object to Defendants' request that the Court take judicial notice of

2    Exhibits 1 (Review of Post-Inspection Responses) and 4 (Revance's Form 8-K filed with the SEC

3    on May 26, 2021) (formerly Exhibits 1 and 18, respectively).  These exhibits are referenced in

4    passing in the SAC, and neither exhibit forms the basis of Plaintiffs' claims.  For this reason, the

5    Court finds that Exhibits 1 and 4 are not the proper subject of judicial notice.[3]

6        **B.    Motion to Strike**

7    Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading . . . any

8    redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Defendants

9    move to strike the Sensabaugh Declaration, which Plaintiffs attached to the SAC, on the basis that

10    it is an improper attachment because it is not a "written instrument" under Federal Rule of Civil

11    Procedure 10(c).  Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a

12    pleading is a part of the pleading for all purposes."  Many courts in this Circuit have concluded a

13    " 'written instrument' within the meaning of Rule 10(c) is 'a document evidencing legal rights or

14    duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease,

15    insurance policy or security agreement.' "  *Nguyen v. Simpson Strong-Tie Co., Inc.*, No. 19-CV-

16    07901-TSH, 2020 WL 5232563, at *4 (N.D. Cal. Sept. 2, 2020) (citing *City of Royal Oak Ret. Sys.*

17    *v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2013 WL 2156358, at *7 (N.D. Cal. May 17,

18    2013)); *see also Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *1 (N.D.

19    Cal. Dec. 13, 2012).  Further, many courts have determined that an expert affidavit is "merely a

20    piece of evidentiary matter that does not exist independently of the complaint" and, accordingly,

21    "does not qualify as a 'written instrument.' "  *Yuan v. Facebook, Inc.*, No. 5:18-CV-01725-EJD,

22    2021 WL 4503105, at *2 (N.D. Cal. Sept. 30, 2021) (citing *In re Rigel Pharms.*, No. C 09-00546

23    JSW, 2010 WL 8816155, at *1 n.1 (N.D. Cal. Aug. 24, 2010)).

24    The Court agrees that it is not appropriate to consider an expert affidavit on a motion to

25    dismiss under Rule 12(b)(6).  *See Juniper Networks, Inc.*, 2013 WL 2156358, at *7.  Moreover,

26    "[a]ffidavits and declarations . . . are not allowed as pleading exhibits unless they form the basis of

27

28    _____
[3] The Court previously declined to judicially notice these exhibits.  ECF 86 at 6.

United States District Court
Northern District of California

1    the complaint." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, the Sensabaugh

2    Declaration plainly is not the basis of Plaintiffs' complaint. Rather, it was prepared for

3    submission with the SAC, and indeed is only referenced once in the SAC as a secondary, "*see*

4    *also*" cite in support of the assertion that FDA regulatory guidance requires a newly prepared

5    WCB to be appropriately qualified by characterization and testing and presented in the product's

6    marketing application. SAC ¶ 76.

7         Because the Sensabaugh Declaration is improper under Rule 10(c), the Court **GRANTS**

8    Defendants' motion to strike it as an exhibit.[4]

9         **C.    Motion to Dismiss**

10        Defendants move to dismiss the SAC, arguing that Plaintiffs have insufficiently pleaded

11   scienter. Scienter is the intent to deceive, manipulate, or defraud. *Tellabs*, 551 U.S. at 319. To

12   establish scienter, the complaint must "state with particularity facts giving rise to a strong

13   inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

14   The required state of mind is "a mental state that not only covers 'intent to deceive, manipulate, or

15   defraud,' but also 'deliberate recklessness.' " *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698,

16   705 (9th Cir. 2016) (internal citations omitted). Deliberate recklessness is " 'an *extreme* departure

17   from the standards of ordinary care,' which 'presents a danger of misleading buyers or sellers that

18   is either known to the defendant or is so *obvious* that the actor must have been aware of it.' " *In re*

19   *Alphabet, Inc. Sec. Litig.*, 1 F.4th at 701 (emphasis in original) (quoting *Nguyen v. Endologix, Inc.*,

20   962 F.3d 405, 414 (9th Cir. 2020)).

21        The "strong inference" of scienter required by the PSLRA "must be more than merely

22   'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other

23   explanations." *Tellabs*, 551 U.S. at 324. "Facts showing mere recklessness or a motive to commit

24   fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient

25   to establish a strong inference of deliberate recklessness." *In re VeriFone Holdings*, 704 F.3d at

26

27   ───────────────

28   [4] Because it grants the Motion on this basis, the Court does not consider Defendants' additional
     assertion that the Declaration should be struck because it amounts to an inadmissible legal opinion
     and unfounded speculation prohibited by Federal Rule of Evidence 702.

United States District Court
Northern District of California

701.  "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference."  *Zucco*, 552 F.3d at 991; *see also Endologix*, 962 F.3d at 415.  In evaluating whether a complaint satisfies the "strong inference" requirement, courts must consider the allegations and other relevant material "holistically," not "scrutinized in isolation."  *In re VeriFone Holdings*, 704 F.3d at 701-02 (citing *Tellabs*, 551 U.S. at 323, 326).  Because scienter is a subjective inquiry, "the ultimate question is whether the defendant knew his or her statements were false, or was consciously reckless as to their truth or falsity."  *Gebhart v. SEC*, 595 F.3d 1034, 1042 (9th Cir. 2010).

In an effort to sufficiently plead scienter, Plaintiffs added two main categories of allegations to the SAC: those related to the Sensabaugh Declaration and those regarding the account of a confidential witness ("CW2").[5]  Because the Court struck the Sensabaugh Declaration, it does not consider the allegations regarding its contents.  Plaintiffs' other new allegations center on the account of a former Revance employee, CW2, who purportedly served as Deputy Chief of Staff from July to December 2021.  SAC ¶ 136.  Plaintiffs allege that CW2 coordinated meetings among Revance staff, including Defendants Foley, Schilke, Joshi, and other executives.  SAC ¶ 136.  CW2 witnessed an "unexpected crisis" unfold at the company on October 12, 2021, when the Form 483 – which the FDA had issued to Revance months earlier – was released publicly.  SAC ¶ 138.  From that day

> until the end of CW2's time at the company, the company seemed to be in crisis management mode, with Foley spending an increasing amount of time talking to analysts and shareholders.  CW2's understanding of these analyst and shareholder calls was to provide background on what the Form 483 revealed about the [Prescription Drug User Fee Act] inspection and the overall impact/potential delay to FDA approval that would result in the go-to-market launch

[5] Plaintiffs also allege Revance is liable for the acts of Individual Defendants and other Revance employees under the doctrine of *respondeat superior* and common law principles of agency.  SAC ¶ 127.  The Court's prior order, ECF 86, granted Plaintiffs leave to amend the FAC to address the identified deficiencies and instructed that no parties or claims could be added without leave of court or stipulation of Defendants.  Plaintiffs' introduction of this new theory of liability without consent of Defendants or leave of court thus falls outside the permission granted and violates Rule 15(a)(2).  *See Strifling v. Twitter Inc.*, No. 22-CV-07739-JST, 2024 WL 54976, at *1 (N.D. Cal. Jan. 4, 2024).

1    of DAXI.

2    SAC ¶ 139.  Plaintiffs argue CW2's account bolsters their claims of scienter because "[t]he fact

3    that the public release of the Form 483 was unexpected and led to an internal crisis at [Revance]

4    supports an inference that Defendants intentionally concealed this information from the public."

5    ECF 99 at 27.

6         While it is not a requirement that a confidential witness have personally interacted with

7    defendants or have "direct knowledge of defendants' state of mind," *see* ECF 99 at 19 (citing

8    *Roberts v. Zuora, Inc.*, No. 19-CV-03422-SI, 2020 WL 2042244, at *10-11 (N.D. Cal. Apr. 28,

9    2020); *In re Northpoint Commc'ns Grp., Inc., Sec. Litig.*, 221 F. Supp. 2d 1090, 1097-98 (N.D.

10   Cal. 2002)), more is needed to show scienter than what Plaintiffs have alleged here.  Indeed, this

11   Court already held that allegations of executives' participation in regular meetings regarding FDA

12   inspection was insufficient to demonstrate the executives' knowledge about issues with the BLA

13   and the FDA approval process.  ECF 86 at 23 (citing *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776,

14   784 (9th Cir. 2008)).  Even if Plaintiffs could show that Revance executives had knowledge of

15   issues with the approval process, the Court already held such a showing was insufficient to meet

16   the high standard of showing deliberate recklessness, which requires a showing of " 'an *extreme*

17   departure from the standards of ordinary care.' "  *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th at 701

18   (emphasis in original).  Allegations that Revance executives were in "crisis" following the public

19   disclosure of the Form 483 does not, without more, naturally lead to the conclusion that

20   Defendants intentionally concealed the information from the public or that there was an extreme

21   departure from ordinary care.  CW2's account thus fails to give rise to a "strong inference" of

22   scienter that is "cogent and compelling, thus strong in light of other explanations."  15 U.S.C. §

23   78u-4(b)(2)(A); *Tellabs*, 551 U.S. at 324.

24        In addition to arguing that these new allegations sufficiently plead scienter, Plaintiffs

25   renew the arguments made to oppose dismissal of their FAC.  These arguments were already

26   considered by the Court, ECF 86 at 22-26, and the Court does not again analyze the arguments for

27   which Plaintiffs have not pleaded additional factual allegations.  Plaintiffs again contend they can

28   show scienter under the "core operations doctrine," which permits the knowledge of certain facts

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    that are critical to a business's "core operations" to be attributed to a company's key officers.

2    *Webb v. Solarcity Corp.*, 884 F.3d 844, 854 (9th Cir. 2018).  However, "corporate management's

3    general awareness of the day-to-day workings of the company's business does not establish

4    scienter – at least absent some additional allegation of specific information conveyed to

5    management and related to the fraud."  *Metzler*, 540 F.3d at 1068.  The Court previously found

6    that Plaintiffs failed to show scienter under the core operations theory.  ECF 86 at 26.  The Court

7    reasoned that Plaintiffs had not "made 'detailed and specific allegations' supporting a strong

8    inference that Defendants Schilke or Foley were intimately involved in the minutiae of the BLA

9    process" such that they would necessarily have knowledge of the deficiencies of the Form 483.  *Id.*

10   at 25.  Even if that knowledge could be imputed to them under the core operations doctrine, the

11   Court found Plaintiffs failed to show that knowledge of manufacturing deficiencies meant that

12   Defendants believed that the BLA was not ready or would not pass inspection.  *Id.* at 26.

13        In the SAC, Plaintiffs add two allegations relating to their "core operations" argument

14   regarding how Individual Defendants Foley and Schilke described DAXI as Revance's top

15   priority.  *See* SAC ¶ 150 ("As Foley put it, getting the 'BLA approved' is 'priority number

16   one[.]' ''); SAC ¶ 153 ("Schilke also described DAXI as Revance's 'core asset' and 'key asset.' '').

17   These allegations are not "allegation[s] of specific information conveyed to management and

18   related to the fraud" that go beyond a "general awareness of the day-to-day workings of the

19   company's business," and are thus insufficient to establish scienter.  *Metzler*, 540 F.3d at 1068.

20        Plaintiffs also allege in the SAC that the fact that Foley and Schilke signed certifications

21   pursuant to the Sarbanes-Oxley Act of 2002 ("SOX certifications") shows they acted with

22   fraudulent intent.  SAC ¶¶ 101-02, 194.  SOX certifications involve certifying that the information

23   provided in the report submitted to the SEC is not misleading due to any omitted material facts.

24   SAC ¶ 194.  The caselaw is unambiguous that SOX certifications are "not sufficient, without

25   more, to raise a strong inference of scienter."  *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d

26   736, 747-48 (9th Cir. 2008); *see also Zucco*, 552 F.3d at 1004 (finding boilerplate SOX

27   certifications "add nothing substantial to the scienter calculus"); *Smith v. NetApp, Inc.*, No. 19-

28   CV-04801-JST, 2021 WL 1233354, at *9 (N.D. Cal. Feb. 1, 2021), *appeal dismissed sub nom.*

1    *Derouin v. NetApp, Inc.*, No. 21-15566, 2021 WL 4437682 (9th Cir. Aug. 2, 2021) (same).  The

2    SOX certifications alone thus cannot support a finding of scienter, and Plaintiffs make no

3    argument otherwise.

4              Finding each of Plaintiffs' individual allegations insufficient, the Court now considers

5    whether "the facts alleged, taken collectively, give rise to a strong inference of scienter."  *In re*

6    *VeriFone Holdings*, 704 F.3d at 701-02 (citing *Tellabs*, 551 U.S. at 323, 326).  "Even if a set of

7    allegations may create an inference of scienter greater than the sum of its parts, it must still be at

8    least as compelling as an alternative innocent explanation."  *Zucco*, 522 F.3d at 1006.  The Court

9    previously found that, viewed holistically, Plaintiffs' allegations in the FAC did not give rise to an

10   overwhelming inference of deliberate recklessness as compelling as competing inferences.  ECF

11   86 at 27.  The introduction of CW2's allegations does not result in a different conclusion.  CW2's

12   allegations that the Revance executives were in "crisis" following the public disclosure of the

13   Form 483, even when viewed together with Plaintiffs' other allegations, do not give rise to an

14   inference of scienter as "cogent or compelling" as the plausible alternatives.  *Zucco*, 552 F.3d at

15   1007.  Rather, it is just as plausible that despite the FDA's issuance of a Form 483, Defendants

16   believed any issues had or would be remedied and that DAXI would ultimately be approved.

17   Indeed, the fact that DAXI was approved the following year makes this alternative all the more

18   compelling.

19             Because the Court finds Plaintiffs have again not shown a cogent inference of scienter,

20   Plaintiffs have failed to adequately plead a 10(b) claim.  While the Court had previously found

21   that some of the challenged statements may be actionable, none of Plaintiffs' claims can proceed

22   absent scienter.  Accordingly, the Court need not determine whether any of the claims would be

23   actionable had Plaintiffs established scienter.  Moreover, as Plaintiffs have failed to adequately

24   allege a violation under Rule 10b-5/Section 10(b), Plaintiffs' Section 20(a) claim necessarily fails,

25   as claims under Section 20(a) require an underlying violation of securities law.  *In re Rigel*

26   *Pharms.*, 697 F.3d at 886.  As Plaintiffs have failed to sufficiently plead any claim, the Court thus

27   dismisses Plaintiffs' SAC.

28             Having determined dismissal of Plaintiffs' SAC is proper, the Court must finally determine

United States District Court
Northern District of California

whether to grant Plaintiffs leave to amend.  In their motion to dismiss, Defendants argue further amendment of the complaint would be futile.  ECF 92 at 29-30.  Plaintiffs did not address the futility of further amendment in their opposition to Defendants' motion.  As Plaintiffs "do not identify any specific factual allegations they would add to a proposed Third Amended Complaint," the Court here finds granting leave to amend would "constitute an exercise in futility."  *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1233-34 (S.D. Cal. 2001).  Accordingly, dismissal without leave to amend is proper.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to strike the Sensabaugh Declaration and **GRANTS** Defendants' motion to dismiss without leave to amend.

**IT IS SO ORDERED.**

Dated: January 17, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California