Lisa Omoto SBN 303830
E-mail: lomoto@faruqilaw.com
**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: 424-256-2884
Facsimile: 424-256-2885

James M. Wilson, Jr. (appearance *pro hac vice*)
Robert W. Killorin (appearance *pro hac vice*)
Email: jwilson@faruqilaw.com
Email: rkillorin@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

*Attorneys for [Proposed] Class Representatives*
*and [Proposed] Class Counsel*
*for the [Proposed] Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: REVANCE THERAPEUTICS, INC. SECURITIES LITIGATION | Case No. 4:21-cv-09585-AMO<br><br>CLASS ACTION |
| This Document Relates To: | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 1, 2026<br>Time: 2:00 p.m.<br>Courtroom: 5 – 2nd Floor<br>Judge: The Hon. Araceli Martínez-Olguín<br>Date Action Filed: December 10, 2021 |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE THAT** on October 1, 2026, at 2:00 p.m., before the Honorable Araceli Martínez-Olguín, Lead Plaintiffs Chonghao Tang, Shengzhen Tang, and Qiuyan Liu (together the "Tang Family Investor Group" or "Plaintiffs") will, and hereby do, move this Court for an order:

1. Preliminarily approving the proposed settlement of this action;
2. Preliminarily certifying the proposed class for purposes of settlement;
3. Appointing Plaintiffs as Settlement Class Representatives and Lead Counsel as Settlement Class Counsel for purposes of settlement;
4. Approving the form and manner of giving notice of the proposed settlement to the class; and
5. Scheduling a final approval hearing before the Court.

This motion is made on the grounds that the settlement is fair, reasonable, and adequate because it is the product of arm's-length, good-faith negotiations after significant litigation, and takes into account the relative strengths and weaknesses of the claims and defenses, as well as the risks involved in pursuing further litigation. This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities set forth below, the Declaration of James M. Wilson, Jr., with attached exhibits, filed herewith; the Stipulation and Agreement of Settlement and its exhibits, filed herewith; the Declaration of Eric Nordskog ("Nordskog Decl."); the pleadings and records on file in this action, and other such matters and arguments as the Court may consider at the hearing of this motion.

Respectfully submitted,

**DATED:** August 10, 2026

**FARUQI & FARUQI, LLP**

*/s/ James M. Wilson, Jr.*
Attorneys for Plaintiffs,
TANG FAMILY INVESTOR GROUP, and
All others similarly situated

## TABLE OF CONTENTS


STATEMENT OF ISSUES TO BE DECIDED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

FACTUAL AND PROCEDURAL BACKGROUND ..... 2

A. Description of the Action ..... 2

B. The Proposed Settlement ..... 3

ARGUMENT ..... 3

I. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..... 3

A. The Court "Will Likely Be Able To" Approve The Proposed Settlement ..... 4

1. The Settlement Class Has Been Adequately Represented ..... 4

2. The Proposed Settlement Was Negotiated at Arm's Length and Is Not the Result of Collusion ..... 5

3. The Relief Provided for the Settlement Class is Adequate ..... 6

a. The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval ..... 7

b. The Proposed Method for Distributing Relief Is Effective ..... 9

c. Terms of Attorneys' Fees and Timing of Payment ..... 10

d. Related Agreements ..... 11

4. The Settlement Treats Settlement Class Members Equitably ..... 11

5. The Extent of Discovery Completed and the Stage of Proceedings ..... 14

6. Risk of Maintaining Class Action Status Through Trial ..... 15

7. The Experience and Views of Counsel ..... 15

B. The Settlement Satisfies This District's Procedural Guidance For Class Action Settlements ..... 15

1. Differences Between the Settlement Class and the Proposed Class in the Operative Complaint ..... 16

2. Differences Between the Claims to Be Released and Those in the Operative Complaint ..... 17

3. Information About the Settlement Administrator and the Selection Process ..... 18

4. No Other Cases Are Affected by the Settlement ..... 18

5. Expected Claims Rate ....18

6. Comparable Outcomes ....19

7. CAFA and Similar Requirements....19

C. The Court "Will Likely Be Able To" Certify The Settlement Class For Settlement....19

1. The Settlement Class Is Sufficiently Numerous....20

2. There Are Common Questions of Law and Fact....20

3. The Proposed Settlement Class Representative's Claims Are Typical....20

4. The Proposed Settlement Class Representatives Are Adequate ....21

5. The Predominance and Superiority Requirements Are Satisfied....21

6. The Faruqi Firm Is Adequate To Serve as Settlement Class Counsel....22

II. THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED ....22

III. PROPOSED SCHEDULE OF EVENTS ....24

CONCLUSION ....24

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re 3D Sys. Sec. Litig.*,
2024 WL 50909 (E.D.N.Y. Jan. 3, 2024)....8

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)....21

*In re Apple Inc. Sec. Litig.*,
2024 WL 4246282 (N.D. Cal. Sep. 18, 2024)....14

*Becker v. Bank of N.Y. Mellon Tr. Co., N.A.*,
2018 WL 6727820 (E.D. Pa. Dec. 21, 2018)....9

*Bernstein v. Ginkgo Bioworks Holdings, Inc.*,
2024 WL 5483605 (N.D. Cal. July 31, 2024)....17

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
2021 WL 345790 (E.D.N.Y. Feb. 1, 2021)....23

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)....6

*Booth v. Strategic Realty Trust, Inc.*,
2015 WL 3957746 (N.D. Cal. June 28, 2015)....20

*In re Celera Corp. Sec. Litig.*,
2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)....3

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
2015 WL 13639423 (S.D.N.Y. Sep. 18, 2015)....11

*Epstein v. MCA, Inc.*,
179 F.3d 641 (9th Cir. 1999)....22

*In re Fibrogen, Inc., Sec. Litig.*,
No. 3:21-cv-02623-EMC (N.D. Cal. Feb. 13, 2024), ECF No. 244....16

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022)....14

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989)....3

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)....4, 5, 7, 20

*Heffler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sep. 4, 2018)....11

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ....................4, 9, 11, 12

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)....................3

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010)....................17

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................8, 15

*In re Magma Design Automation, Inc. Sec. Litig.*,
2007 WL 2344992 (N.D. Cal. Aug. 16, 2007)....................19, 20

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)....................14

*Mehedi v. View, Inc.*,
No. 5:21-cv-06374-BLF (N.D. Cal. July 18, 2025), ECF No. 258 ....................16

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)....................22

*Patel v. Axesstel, Inc.*,
2015 WL 6458073 (S.D. Cal. Oct. 23, 2015)....................8

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007) ....................23

*Rieckborn v. Velti PLC*,
2015 WL 468329 (N.D. Cal. Feb. 3, 2015)....................6, 14, 15

*Ruch v. AM Retail Grp., Inc.*,
2016 WL 5462451 (N.D. Cal. Sep. 28, 2016)....................6

*Satchell v. Fed. Express Corp.*,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)....................5

*Smilovits v. First Solar, Inc.*,
2020 BL 245619 (D. Ariz. June 30, 2020)....................10

*In re Tahoe Res., Inc. Sec. Litig.*,
No. 2:17-cv-01868-RFB-NJK, ECF No. 280 (D. Nev. Aug. 25, 2025)....................10

*Thomas v. MagnaChip Semiconductor, Inc.*,
2016 WL 1394278 (N.D. Cal. Apr. 7, 2016)....................10

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ....................13

*In re Valeant Pharms. Int'l Inc., Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020) .......... 12, 13

*In re Verisign, Inc. Sec. Litig.*,
2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) .......... 20, 22

*In re Veritas Software Corp. Sec. Litig.*,
2005 WL 3096079 (N.D. Cal. Nov. 15, 2005) .......... 13

*Villegas v. J.P. Morgan Chase & Co.*,
2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .......... 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
2016 WL 4010049 (N.D. Cal. July 26, 2016) .......... 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .......... 14

*In re Zynga, Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .......... *passim*

**Statutes**

15 U.S.C. §78u-4(a)(4) .......... 13

**Other Authorities**

Rule 23 .......... *passim*

Rules 23(e)(2) advisory committee's note to 2018 amendments .......... 12

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should grant preliminary approval of the Settlement on the terms set forth in the Stipulation and set a hearing date for a Settlement Hearing to determine whether the Settlement should receive final approval as fair, reasonable, and adequate.[1]

2. Whether the Court should approve the form, content, and dissemination methods of the proposed notices to the Settlement Class, and the selection of A.B. Data as Claims Administrator.

3. Whether the Settlement Class should be preliminarily certified for purposes of the Settlement only.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs, on behalf of themselves and the putative Settlement Class, and defendants Revance Therapeutics, Inc. ("Revance" or the "Company"), Mark J. Foley, Tobin C. Schilke, and Dr. Abhay Joshi (collectively, the "Individual Defendants," and together with Revance, "Defendants"), have reached a proposed class-wide settlement for $1,260,000 that, if approved, will resolve all claims in the above-captioned action (the "Action"). The Settlement was reached only after a thorough investigation by Lead Counsel, the filing of an amended complaint and a Second Amended Class Action Complaint ("SAC"),[2] comprehensive briefing on Defendants' two motions to dismiss, and a mediation session with a highly experienced mediator, Michelle Yoshida. The proposed Settlement represents a favorable result for the Settlement Class, particularly in light of the fact that the SAC was dismissed with prejudice and the Settlement was reached while Plaintiffs' appeal of the dismissal was pending.

For these reasons, as well as those set forth below, Plaintiffs respectfully submit this memorandum of law in support of their motion and request that the Court: (1) preliminarily approve

---

[1] Unless otherwise noted, the following conventions are used herein: (i) all capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation and Agreement of Settlement dated as of July 31, 2026 (the "Stipulation" or "Stip."), filed concurrently herewith; (ii) all quotation marks and citations are omitted; (iii) all emphases are added; and (iv) all references to "Stip. Ex. ___" are to the Exhibits annexed to the Stipulation.

[2] Unless stated otherwise, all paragraphs referenced to as "¶__" are to the SAC, filed May 1, 2024. ECF No. 87.

the Settlement; (2) preliminarily certify the Settlement Class for settlement purposes; (3) preliminarily appoint Plaintiffs as Settlement Class Representatives and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Settlement Class Counsel; (4) approve the form and manner of giving notice of the settlement to the Settlement Class; and (5) set a date for the Settlement Hearing.

For ease of reference, Plaintiffs include an Appendix that addresses each relevant part of this District's Procedural Guidance for Class Action Settlements, although all of those requirements are addressed herein.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Description of the Action

This action was filed on December 10, 2021. ECF No. 1. After considerable motion practice and a hearing, the Court appointed the Tang Family Investor Group as Lead Plaintiffs, and the Faruqi Firm as Lead Counsel in this federal Action on September 7, 2022. ECF No. 50.

On November 7, 2022, Plaintiffs filed the First Amended Complaint ("FAC"). ECF No. 58. The FAC alleged that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by misrepresenting and omitting material information concerning Revance's Biologics License Application ("BLA") for its drug DaxibotulinumtoxinA ("DAXI") and its chances of being approved as submitted to the U.S. Food and Drug Administration ("FDA") and commercialized in 2021. On January 23, 2023, Defendants filed the First Motion to Dismiss the FAC ("Motion to Dismiss" or "MTD"), ECF No. 65, as well as the Request for Incorporation By Reference and Judicial Notice, ECF No. 66. The District Court granted Defendants' Motion to Dismiss, with leave for Plaintiffs to file a second amended complaint. ECF No. 86.

On May 1, 2024, Plaintiffs filed the SAC. ECF No. 87. On May 28, 2024, Defendants filed the Motion To Dismiss the SAC ("Second MTD"), ECF No. 92, as well as the Motion to Strike the Declaration of an Expert Witness ("Motion to Strike" or "MTS"), ECF No. 91, and Request for Incorporation by Reference and Judicial Notice, ECF No. 94. The District Court granted Defendants' Motion to Strike and Second MTD. ECF No. 107.

On February 18, 2025, Plaintiffs appealed. ECF No. 109. Thereafter, the parties agreed

to mediate and informed the appellate court of their intention to do so. On June 13, 2025, through private mediation, the Parties came to an agreement in principle to settle the litigation. On August 13, 2025, the Parties filed a joint Motion to Dismiss the Appeal without Prejudice, which was granted. ECF No. 112.

**B. The Proposed Settlement**

The proposed settlement provides for $1,260,000 in cash to Settlement Class Members. It is currently estimated that if Settlement Class Members submit claims for 100% of the securities eligible for distribution, the average distribution per share of common stock and per 144A Convertible Note will be approximately $0.036 and $0.596, respectively, before deduction of Court-approved fees and expenses. The Settlement Amount represents approximately 0.32% of the Settlement Class's estimated maximum damages. *See* §I.A.3.a. Under either measure, the settlement is fair, reasonable, and adequate, particularly considering the case was dismissed with prejudice and settled while an appeal was pending. *Id.*

This settlement will fully resolve the lawsuit in connection with the claims alleged in the SAC for those who purchased or otherwise acquired Revance securities between November 25, 2019 and October 15, 2021, both dates inclusive (the "Settlement Class Period").

## ARGUMENT

## I. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure ("Rule") 23(e) provides that any compromise of a class action must receive court approval. The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005). "[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits[.]" *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989).

The settlement approval process involves two steps: "(1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class." *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015).

The issue at preliminary approval is whether the court "will ***likely*** be able to: (i) approve

the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(1)(B). Rule 23(e)(2) directs the court to determine whether the settlement is "fair, reasonable, and adequate" after considering whether: (A) the class has been adequately represented; (B) the proposal was negotiated at arms' length; (C) the relief provided is adequate; and (D) the proposal treats class members equitably relative to each other.

In addition to Rule 23(e)'s factors, courts in the Ninth Circuit also consider the following factors, several of which overlap with Rule 23(e)(2)'s factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See In re Zynga, Inc. Sec. Litig.*, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). When settlements, like this one, "occur before formal class certification . . . . the court must also ensure that the settlement is not the product of collusion among the negotiating parties." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

As explained below, the Settlement satisfies the applicable factors such that Notice of the proposed Settlement should be sent to the Settlement Class.[3]

### A. The Court "Will Likely Be Able To" Approve The Proposed Settlement

#### 1. The Settlement Class Has Been Adequately Represented

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Determining adequacy requires "[r]esolution of two questions . . . : (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d

[3] The "presence of a governmental participant" and "the reaction of the class members to the proposed settlement" are not relevant because there is no governmental entity involved and notice has not yet been disseminated to the Settlement Class. *Zynga*, 2015 WL 6471171, at *8.

1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Both prongs are met here. Plaintiffs' interests are directly aligned with those of other Settlement Class Members, as they claim to have suffered damages from the same alleged conduct, and through those claims seek the same recovery from Defendants.

Additionally, Lead Counsel is a national law firm that is qualified, experienced, and able to conduct this litigation. *See* Ex. 1, Faruqi Firm resume.[4] Lead Counsel has devoted significant efforts to identifying and investigating the potential claims in this Action and has fought to preserve those claims.

**2. The Proposed Settlement Was Negotiated at Arm's Length and Is Not the Result of Collusion**

Rule 23(e)(2)(B) requires the Court to consider whether the proposed settlement "was negotiated at arm's length[.]" Here, Plaintiffs and Lead Counsel diligently prosecuted this action by: (i) conducting a thorough investigation into the facts alleged in the Action, including reviewing and analyzing documents filed publicly with the SEC and press releases, news articles, financial information, and public statements issued by or concerning Revance; (ii) consulting with an FDA consultant and a damages consultant; (iii) drafting the FAC and SAC; and (iv) opposing Defendants' motions to dismiss. Only then did counsel engage in the mediation process with an experienced mediator, Michelle Yoshida, which included the exchange of detailed mediation statements and a full-day mediation session. *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (participation of a mediator supports finding of non-collusion). Thus, the parties engaged in negotiations with a comprehensive understanding of the strengths and weaknesses of their positions and the procedural hurdles facing this Action. *See Zynga*, 2015 WL 6471171, at *8 ("For the parties to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value.").

Furthermore, Lead Counsel is a nationally-recognized law firm with substantial experience prosecuting securities class actions, *see* Ex. 1, and Defendants' counsel, Cooley

[4] "Wilson Decl." refers to the Declaration of James M. Wilson, Jr. submitted herewith.

LLP, has a well-known securities litigation practice.[5] Courts in this district have found that where a settlement is "the result of arm's-length negotiations by experienced Class Counsel[,] . . . [it] is entitled to an initial presumption of fairness." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016).

Additionally, no indicators of collusion are present. *See Bluetooth*, 654 F.3d at 947 (identifying three subtle signs of collusion: (a) when class counsel receives a disproportionate percentage of the settlement; (2) when the parties negotiate a "clear sailing" agreement separate from the settlement fund; and (3) when the parties arrange for fees not paid to revert to defendants). Lead Counsel intends to request an award of attorneys' fees equal to 14% of the Settlement Fund, which is substantially less than the benchmark of 25% in this Circuit, and $200,000 in expenses, thus weighing against a finding of collusion. *See* §I.A.3.c, *infra*; *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (finding 25% fee and request for approximately $219,000 in litigation expenses weighed against finding of collusion). There is also no "clear sailing" agreement—*i.e.*, an "arrangement providing for the payment of attorneys' fees separate and apart from class funds[.]" *Bluetooth*, 654 F.3d at 947. The attorneys' fees are to be paid only out of the Settlement Fund, at a rate approved by the Court, and any fees requested but denied by the Court would remain in the Settlement Class's Settlement Fund. *See* Stip. ¶¶16, 18. This is a non-reversionary settlement. Stip. ¶14.

Thus, the parties did not engage in collusion when entering into the settlement. *See Ruch v. AM Retail Grp., Inc.*, 2016 WL 5462451, at *8 (N.D. Cal. Sep. 28, 2016) (finding no collusion when the parties "participated in a formal private mediation, then spent several weeks negotiating the details of the Settlement Agreement and the class notice.").

**3. The Relief Provided for the Settlement Class is Adequate**

Rule 23(e)(2)(C) requires the Court to determine whether the relief provided for the Settlement Class is adequate, taking the following considerations into account: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of proposed methods of distributing

---

[5] *See, e.g.*, Cooley LLP, Securities Litigation & Enforcement, https://www.cooley.com/services/practice/securities-litigation-and-enforcement.

relief to the class; (3) the terms and timing of attorneys' fees; and (4) any related agreements. Each of these considerations is addressed below, along with the Ninth Circuit factors that overlap with them.

**a. The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval**

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of trial and appeal. This inquiry overlaps with the following Ninth Circuit factors: "the strength of the plaintiffs' case; the risk, expense complexity, and likely duration of further litigation;" and "the amount offered in settlement[.]" *See Hanlon*, 150 F.3d at 1026.

The Settlement provides an immediate benefit to the Settlement Class and is adequate when compared to the risk that no recovery, or lesser recovery, might be achieved after prolonged litigation—particularly considering that the Action had been dismissed and was on appeal at the time the parties agreed to settle.

Defendants have raised numerous challenges and adamantly deny any wrongdoing. *See* Stip. 4-5; *see generally* ECF Nos. 65-66, 91-94 (Defendants' MTD, Request for Judicial Notice and MTS briefings). The litigation risk facing the Settlement Class is considerable: the Court dismissed the SAC with prejudice, reflecting the Court's determination that the claims could not be saved by further amendment—a finding that would present a formidable obstacle on appeal. Moreover, even if the Action survived the appeal, the fact discovery process would likely be time-consuming and expensive. For example, the SAC alleges, *inter alia*, that the Individual Defendants knew or recklessly disregarded that the results of the pre-approval inspection materially decreased the likelihood that the FDA would approve the BLA as submitted, and investors were misled about the true state of affairs regarding the commercial readiness of DAXI. *See, e.g.,* SAC ¶¶ 98, 100-01, 103-05, 107, 109. Thus, the fact discovery process would require, among other things, numerous document subpoenas to the FDA and other third parties, which are notoriously difficult to enforce; the retention of expert witnesses regarding highly technical issues about the BLA process; likely discovery motion practice; production and

review of thousands of pages of documents; and numerous depositions. Defendants would undoubtedly aggressively litigate this Action at each step. Thus, even after the considerable time and expense of discovery, there is a chance Plaintiffs' claims could be dismissed at summary judgment. Even if the claims were to survive summary judgment, trial would be very time-consuming and expensive and would monopolize valuable court resources. Indeed, the damages issues present in this case would likely boil down to a "battle of the experts" at trial, creating the risk that the jury may believe Defendants' expert over Plaintiffs' and find in Defendants' favor. Thus, after the expense and time devoted to taking this Action to trial, the Settlement Class could be left with no recovery at all. Indeed, this Action would not necessarily end after a trial; the losing party might appeal the decision, leading to additional years of protracted litigation. *See Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *5 (S.D. Cal. Oct. 23, 2015) ("The settlement prevents these expenses" of "discovery, motion practice, experts, trial, and appeals" "and the likely long duration of the litigation from eroding or delaying the ultimate recovery, if any, of the class members.").

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* at *5; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").

Thus, the Settlement Amount of $1,260,000 is well within the range of reasonableness under the circumstances. It is currently estimated that if Settlement Class Members submit claims for 100% of the securities eligible for distribution, the average distribution per share of common stock and per note will be approximately $0.036 and $0.596, respectively, before deduction of Court-approved fees and expenses. The Settlement Amount represents approximately 0.32% of the Settlement Class's estimated maximum damages of $392,845,722. While relatively low, it is reasonable under the circumstances. *See In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 (E.D.N.Y. Jan. 3, 2024) (approving settlement that "represents approximately 1% of the maximum estimated aggregate damages" where settlement was

reached before the motion to dismiss was decided). Indeed, the Settlement's guaranteed relief is far superior to the uncertain prospects of continued litigation. In light of the foregoing, the Settlement represents a favorable recovery that is in the best interests of the Settlement Class.

**b. The Proposed Method for Distributing Relief Is Effective**

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims. The Settlement provides a well-established method for distributing relief to eligible Settlement Class Members and processing claims. As explained in Section II, *infra*, the notice plan includes the proposed Claims Administrator, A.B. Data, mailing the Postcard Notice to all Settlement Class Members who can be identified with reasonable efforts. *See* Stip. Exs. A-1 & A-2. The Postcard Notice will direct the recipients to the Settlement website, which contains the Notice and Proof of Claim Form. These documents will request the information necessary for the Claims Administrator to calculate each eligible Settlement Class Member's claim pursuant to the Plan of Allocation. *See* Stip. Ex. A-1 at 15-18; Ex. A-2. Under the proposed Plan of Allocation, which was developed with the assistance of a damages consultant, Settlement Class Members who are entitled to a distribution of at least $10 will receive a *pro rata* share of the recovery based upon their claimed losses consistent with the Action's allegations. *See* Stip. Ex. A-1 at 15-18. Plaintiffs respectfully submit that this method of distribution and claims processing is effective. *See Hefler*, 2018 WL 6619983, at *2, *7 (finding a similar method of distribution and claims processing to be effective); *Becker v. Bank of N.Y. Mellon Tr. Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) (finding that the "methods of distributing relief to the class and of processing class-member claims are fair[]" where class members were required to submit a proof of claim listing their relevant holdings and provide documentation to substantiate their holdings).

The settlement contemplates a *cy pres* award only if any residual settlement funds are left in the Net Settlement Fund that cannot feasibly be distributed to Authorized Claimants. *See* Stip. Ex. A-1 at 18. The proposed *cy pres* beneficiary, CII Research and Education Fund, or CII-REF, is an appropriate recipient for any such residual funds as "it 'bears a substantial nexus

to the interests of the class members[.]'" *Thomas v. MagnaChip Semiconductor, Inc.*, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016). CII-REF is a nonpartisan tax-exempt organization under §501(c)(3) of the Internal Revenue Code, which "focuses on educating the public, investors, corporations, other financial market participants and policymakers about topical issues, including corporate governance, shareholder rights, investment, capital markets, accounting standards and securities litigation." *See* www.ciiref.org. CII-REF is therefore a suitable recipient of any residual funds in this shareholder class action alleging violations of the federal securities laws. *See Smilovits v. First Solar, Inc*., 2020 BL 245619, at *7 (D. Ariz. June 30, 2020) (approving CII-REF as the cy pres recipient to be "a suitable recipient of any residual funds in this shareholder class action alleging violations of the federal securities laws" because "there is a nexus between the plaintiff class" and CII-REF). Lead Counsel does not have a relationship with CII-REF, but has successfully proposed it as a *cy pres* beneficiary for unclaimed or non-distributable funds in another securities class action in which it served as Lead Counsel. *See In re Tahoe Res., Inc. Sec. Litig*., No. 2:17-cv-01868-RFB-NJK, ECF No. 280 ¶8 (D. Nev. Aug. 25, 2025).

**c. Terms of Attorneys' Fees and Timing of Payment**

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment[.]" Lead Counsel intends to seek an award of attorneys' fees of 14% of the Settlement Amount, and expenses in an amount not to exceed $200,000, plus interest on both amounts. This request is significantly less than the 25% benchmark rate for attorneys' fees in this Circuit and is consistent with awards in similar actions. *See Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012) ("In common fund cases such as this, [the Ninth Circuit has] established twenty-five percent (25%) of the common fund as the benchmark award for attorney[s'] fees.").

Lead Counsel's current estimated lodestar to date is approximately $700,000 based on approximately 1,187 hours of attorney and professional staff time. An award of 14% of the Settlement Fund (approximately $176,400) represents significantly less than the actual fees

incurred, resulting in a multiplier of less than one.[6] No argument can be made that the requested attorneys' fees would result in a windfall to Lead Counsel.

The Stipulation provides that the fees are to be paid to Lead Counsel "promptly after entry of the Order awarding such attorneys' fees and expenses and entry of the Judgment," notwithstanding any objection or other challenge thereto, subject to the obligation to repay as described therein. Stip. ¶17. The timing of payment is standard in class action cases and typically approved. *See, e.g.*, *In re China MediaExpress Holdings, Inc. S'holder Litig*., 2015 WL 13639423, at *2 (S.D.N.Y. Sep. 18, 2015) (awarding fees to be paid "from the Settlement Fund within ten calendar days" of the entry of the final judgment or the fee order, if later, subject to an obligation to repay). Lead Counsel respectfully submits that the contemplated attorneys' fee award and the timing of payment are reasonable and do not weigh against preliminary approval.

**d. Related Agreements**

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it. The only such agreement is the parties' confidential Supplemental Agreement, pursuant to which Defendants may terminate the Settlement if the requests for exclusion reach a certain threshold. This type of agreement is common in class actions and is kept confidential to prevent people from teaming up to meet the objection threshold to obtain special payments at the expense of the Settlement Class. *Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). *Heffler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sep. 4, 2018) (finding "compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement").

**4. The Settlement Treats Settlement Class Members Equitably**

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members

---

[6] Lead Counsel will provide a detailed lodestar report with its motion for an award of attorneys' fees and reimbursement of expenses which it anticipates filing pursuant to the proposed schedule of events set forth in §III below.

equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways[.]" Rule 23(e)(2) advisory committee's note to 2018 amendments.

The Plan of Allocation, set forth in the Notice, explains how Settlement proceeds will be distributed. It was drafted with the help of a damages consultant, Stanford Consulting Group, Inc., as well as the Claims Administrator which has many years of experience implementing such plans. The Plan of Allocation's objective is to distribute a *pro rata* share of the net Settlement Fund to Authorized Claimants based on their respective losses attributable to the alleged fraud.

Specifically, after Authorized Claimants submit their Proof of Claim forms and supporting documentation, the Claims Administrator will calculate each Authorized Claimants' Recognized Loss according to a formula that will take into account when and at what price they purchased Revance securities and when such securities were sold. In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have purchased or otherwise acquired Revance securities during the Settlement Class Period and held their securities through at least one of the corrective disclosures set forth in the Plan of Allocation as derived from the SAC. The amount recovered will vary depending upon when in relation to the corrective disclosures each security was sold. Settlement Class Members will be required to sign the same release and will receive a *pro rata* share of the recovery based upon their Recognized Losses consistent with the Action's allegations. *See* Stip. Ex. A-1 at 14-18. Thus, the proposed Settlement treats Settlement Class Members equitably relative to each other. *See Hefler*, 2018 WL 6619983, at *8 (finding settlement treated class members equitably where those "who submit timely claims will receive payments on a *pro rata* basis based on the date(s) class members purchased and sold [the Company's] common stock, as well as the total number and amount of claims filed[]").

Due to the difficulty in calculating damages for option traders,[7] the Plan of Allocation

---

[7] *Cf. In re Valeant Pharms. Int'l Inc., Sec. Litig*., 2020 WL 3166456, at *10 (D.N.J. June 15, 2020), *R & R of the Special Master adopted by* 2021 WL 358611 (D.N.J. Feb. 1, 2021) (explaining that the treatment of options in the plan of allocation, which included allocating a

provides that the total payments associated with transactions in Revance options are limited to 1% of the Net Settlement Fund, commensurate with the relative trading volumes of Revance securities during the Settlement Class Period as determined by Plaintiffs' damages expert. This means that if the cumulative Recognized Loss amounts for option claims exceed 1% of all Recognized Losses, the Recognized Losses for option claims will be reduced proportionately until they collectively equal 1% of all Recognized Losses. Courts often find such limitations on options claims to be fair and reasonable. *See, e.g., In re Tyco Int'l, Ltd. Multidistrict Litig*., 535 F. Supp. 2d 249, 264 (D.N.H. 2007) (overruling objection to the plan of allocation's limitation of losses from option trading to 1% of the settlement amount); *In re Veritas Software Corp. Sec. Litig*., 2005 WL 3096079, at *9 (N.D. Cal. Nov. 15, 2005) (finding limitation on total recovery by options traders to 2% of the settlement proceeds to be "fair and reasonable"), *vacated in part on other grounds*, 496 F.3d 962 (9th Cir. 2007).

While Plaintiffs will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation, they will also seek an award of $20,000 for their reasonable costs and expenses (including lost wages) directly relating to their representation of the class, as authorized by the PSLRA. *See* 15 U.S.C. §78u-4(a)(4). Plaintiffs plan to support their request for an award at the final approval stage with a declaration attesting to the amount of time they devoted to the Action and any reasonable expenses they personally incurred in representing the Settlement Class. That said, Lead Counsel represents that Plaintiffs spent approximately 160 hours on this Action over the past 4 years by gathering their Revance transaction information and sending it to Lead Counsel, engaging in numerous phone calls, in person meetings, and email correspondence about the case with Lead Counsel, reviewing and signing certifications in connection with the lead plaintiff appointment process, and attending the mediation and approving the settlement. As noted, Congress expressly envisioned such awards, and this Court

---

maximum of 5% of the Net Settlement Fund to options, was appropriate because, *inter alia*, "option values naturally diminish over[ ] time and the complex option price dynamics makes it difficult to differentiate between fraud- and non-fraud based factors[,]" and that such treatment "is a generally accepted and widely used methodology for equitably allocating a settlement fund in light of the differentiating factors affecting options damages[]").

and other courts in this District routinely award similar service awards in securities class actions. *See, e.g., In re Apple Inc. Sec. Litig.*, 2024 WL 4246282, at *7 (N.D. Cal. Sep. 18, 2024) (finding $29,946.40 an appropriate award to lead plaintiff in PSLRA case for "expend[ing] significant resources that would otherwise have been dedicated to [its] daily operation"); *Fleming v. Impax Lab'ys Inc*., 2022 WL 2789496, at *10 (N.D. Cal. July 15, 2022) (granting requested awards of, *inter alia,* $9,462.50 based on hourly rates over $300 for "significant time [the lead plaintiffs] spent working with counsel on litigation preparation by, among other items, participating in the litigation and settlement processes.").

**5. The Extent of Discovery Completed and the Stage of Proceedings**

The Ninth Circuit also looks to the extent of discovery completed and the stage of proceedings in evaluating a class action settlement to determine whether the parties had sufficient information before entering into the settlement. Formal discovery "is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016).

Although the Settlement was achieved relatively early in the litigation, by the time the parties agreed to mediate, Lead Counsel had already investigated, researched, and drafted two amended complaints, and the parties briefed two motions to dismiss. Additionally, the case had already been dismissed twice and was on appeal, meaning that further litigation could only occur if the Ninth Circuit overturned the Second MTD order. Thus, Settlement was reached only after the parties had a comprehensive understanding of the potential risks and procedural hurdles facing further litigation of the Action. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458-59 (9th Cir. 2000), as amended (June 19, 2000) (affirming district court's approval of $1.725 million settlement where no discovery took place, noting "[t]he district court's conclusion that the Plaintiffs had sufficient information to make an informed decision about the Settlement is not clearly erroneous[]"); *Rieckborn*, 2015 WL 468329, at *6 (finding that "[d]espite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of

the relevant facts and law[,]" even though settlement was reached before the filing of a motion to dismiss).

#### 6. Risk of Maintaining Class Action Status Through Trial

The class has not yet been certified. While Plaintiffs are confident that the class meets the requirements for certification, *see* §I.C, Plaintiffs are aware that the Court could disagree. Even if the Court were to certify the class, there is always a risk that the class could be decertified later. *See* Rule 23(c)(1)(C) (providing that a class certification order may be altered or amended any time before a decision on the merits).

#### 7. The Experience and Views of Counsel

As set forth in detail in the Faruqi Firm's resume, Lead Counsel is a nationally-recognized law firm that has substantial experience in litigating securities class action lawsuits and has negotiated many substantial recoveries for classes across the country. *See* Ex. 2. Defendants were also represented by highly reputable firms. *See* §I.A.2. Lead Counsel, having carefully considered and evaluated, *inter alia*, the chances of success on appeal, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likelihood of subsequent appellate proceedings even if Plaintiffs were to prevail against Defendants at trial, concluded that the settlement here is an excellent result for the Settlement Class. *See* §I.A.3.a. Thus, since "[b]oth Parties are represented by experienced counsel[,] . . . their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to [a] great deal of weight." *Immune Response*, 497 F. Supp. 2d at 1174.

### B. The Settlement Satisfies This District's Procedural Guidance for Class Action Settlements

This District's Procedural Guidance for Class Action Settlements ("Procedural Guidance") sets forth additional factors for Courts to consider at preliminary approval. Many have been addressed above, so Plaintiffs address only those not yet discussed here. For ease of reference, each requirement is also addressed in the Appendix submitted herewith.

### 1. Differences Between the Settlement Class and the Proposed Class in the Operative Complaint

Plaintiffs seeks certification of the following Settlement Class for the purposes of Settlement only:

> [A]ll Persons who purchased or otherwise acquired Revance securities between November 25, 2019 and October 15, 2021, both dates inclusive (the "Class Period"), and were damaged thereby. Excluded from the Settlement Class are (i) Defendants; (ii) any current or former officers or directors of Revance; (iii) members of the Immediate Family of each of the Individual Defendants or any current or former officer or director of Revance; and (iv) any entity that any Defendant owns or controls, or owned or controlled, during the Class Period.

Stip. ¶1.rr. This Class definition differs slightly from the SAC's in two ways. First, it uses the longer class period alleged in the FAC, rather than the shorter one alleged in the SAC (August 5, 2021 to October 15, 2021). This difference is appropriate because the underlying factual allegations and alleged misconduct in both the FAC and SAC are the same. Moreover, given that the case was dismissed and on appeal at the time of mediation, it is Plaintiffs' understanding that Defendants would not have agreed to pay the amount offered in settlement to cover only those who purchased or acquired securities during the very brief (two-month) class period alleged in the SAC. Courts in this District regularly approve settlements that release claims for a class period longer than that alleged in the operative complaint or certified at class certification. *See, e.g., Mehedi v. View, Inc.*, No. 5:21-cv-06374-BLF (N.D. Cal. July 18, 2025), ECF No. 258 at ¶2 (approving a settlement with a class period of November 30, 2020 to May 10, 2022, which was the same class period as the amended complaint (ECF No. 96 at ¶1), while the operative complaint covered only November 30, 2020 through November 9, 2021 (ECF No. 175 at ¶1)); *In re Fibrogen, Inc., Sec. Litig.*, No. 3:21-cv-02623-EMC (N.D. Cal. Feb. 13, 2024), ECF No. 244 at ¶3 (approving a settlement with a class period of December 20, 2018 through July 15, 2021 although the class was previously certified through only April 6, 2021). Second, the Settlement Class describes those excluded from the Class slightly differently from the SAC, which is appropriate because it serves to clarify who is excluded. *Compare* Stip. ¶1.rr, *with* SAC ¶195 ("Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their

legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.").

### 2. Differences Between the Claims to Be Released and Those in the Operative Complaint

A settlement agreement may release claims "based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp*., 598 F.3d 581, 590 (9th Cir. 2010). That is the case here. The SAC alleges federal securities claims (under the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder) based on certain misrepresentations and omissions by Defendants in press releases, SEC filings, and conference calls. As outlined in the SAC, Plaintiffs allege that Revance's securities were artificially inflated as a result of Defendants' alleged false and misleading statements, and Revance securities' prices declined when the alleged truth regarding Defendants' alleged misrepresentations were revealed. The claims being released include all claims alleged in this Action (*i.e*., claims in both the FAC and the SAC), including claims that "could have been asserted" or "could be asserted in the future" Stip. ¶1.nn. Such claims must "arise out of, are based upon, or relate in any way to any of the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, set forth, alleged or referred to, in this Action, or which could have been alleged in this Action, ***and*** (b) arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of Revance securities during the Settlement Class Period." Stip. ¶1.mm. In other words, the scope of the release "is limited to claims that relate to both the [SAC's] factual allegations and to the purchase or ownership of the [Revance] securities in question[.]" *Bernstein v. Ginkgo Bioworks Holdings, Inc*., 2024 WL 5483605, at *3 (N.D. Cal. July 31, 2024). Such limitations "ensure that 'the released claim[s] [are] based on the identical factual predicate as that underlying the claims in the settled class action." *Id.*

### 3. Information About the Settlement Administrator and the Selection Process

A.B. Data has been retained by Lead Counsel, subject to Court approval, to act as the Claims Administrator and provide notice and claims administration services for the Settlement. Lead Counsel sent requests to three highly experienced, national class action settlement administration firms, all of whom have extensive experience in providing settlement administration for securities class action settlements. All three firms submitted comprehensive proposals in response to Lead Counsel's request for information on the estimated number of Settlement Class members, the estimated claims response rate, and the costs of administration. The three firms submitted substantially similar methods of notice and generally proposed similar methods of claims processing and payment (wire transfers and checks), consistent with industry standards in the securities class action context. Lead Counsel carefully analyzed all the responses in light of the requirements of this Settlement, taking into account both the estimated costs provided by each and the quality of the submission, before selecting A.B. Data. Courts have routinely found A.B. Data as experienced in claims administration of securities class action settlements, including in this District. Lead Counsel has not engaged A.B. Data within the last two years.

A.B. Data has submitted a declaration herewith to address its procedures for securely handling class member data, its acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, and the reasonableness of those costs in relation to the value of the settlement. *See* Nordskog Decl. ¶¶5, 26. These costs will be paid out of the Settlement Fund. Stip. ¶¶9-10.

### 4. No Other Cases Are Affected by the Settlement

Plaintiffs are not aware of any other pending cases that will be affected by the Settlement.

### 5. Expected Claims Rate

Based on A.B. Data's experience in the settlement of securities cases, it is estimated that claims will be received for approximately 70% of damaged shares (*see* Nordskog Decl. ¶¶18,

19). A.B. Data sets forth comparable cases for this estimate in the Nordskog Declaration. *See* ¶18.

**6. Comparable Outcomes**

Plaintiffs set forth three comparable cases in the Appendix at ¶11: *Tran v. ERBA Diagnostics, Inc. et al.*, No. 1:15-cv-24440-Civ-COOKE/TORRES (S.D. Fla.) ($1.215 million settlement); *Lewis v. YRC Worldwide Inc. et al.*, No. 1:19-cv-0001-GTS-ATB (N.D.N.Y.) ($2.1 million settlement); *Wong v. Arlo Techs., Inc. et al.*, No. 5:19-cv-00372-BLF (N.D. Cal.). They were chosen because they were federal securities class actions that settled for under $2.2 million following dismissal while the case was on appeal.

**7. CAFA and Similar Requirements**

As noted in the Stipulation, Revance shall timely serve a CAFA notice within ten (10) calendar days of the filing of the Stipulation with the Court. No other notices to government entities are required.

**C. The Court "Will Likely Be Able To" Certify The Class For Settlement**

Rule 23(e)(1)(B)(ii) requires the Court to consider whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Plaintiffs seek certification of the Settlement Class defined in §I.B.1, *supra.*

Rule 23(a) sets forth four prerequisites to class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, the Court must find that at least one of the three subsections of Rule 23(b) is met. *See Zynga*, 2015 WL 6471171, at *6. Under Rule 23(b)(3), a class may be certified if the Court finds that: (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. "As in almost all lawsuits by shareholders of public companies, the investors in this case easily satisfy the requirements of Rule 23." *In re Magma Design*

*Automation, Inc. Sec. Litig.*, 2007 WL 2344992, at *1 (N.D. Cal. Aug. 16, 2007). This Action satisfies all the factors for class certification.

**1. The Settlement Class Is Sufficiently Numerous**

Rule 23(a) provides that a class may be certified if it is "so numerous that joinder of all members is impracticable[.]" "In cases involving securities traded on national stock exchanges, numerosity is practically a given." *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *4 (N.D. Cal. Jan. 13, 2005). Revance stock trades on the Nasdaq Global market and is potentially owned by hundreds or thousands of persons who are Settlement Class Members. *See* SAC ¶¶30, 196. Thus, joinder would be impractical and the numerosity requirement of Rule 23(a)(1) is satisfied.

**2. There Are Common Questions of Law and Fact**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class[.]" "Courts regularly hold that commonality is plainly satisfied in a securities case where the alleged misrepresentations . . . obviously present important common issues." *Booth v. Strategic Realty Trust, Inc.*, 2015 WL 3957746, at *3 (N.D. Cal. June 28, 2015). In this case, the overarching issue shared by all members of the proposed Settlement Class is whether Defendants violated the Exchange Act in connection with Plaintiffs' factual allegations discussed above. *See* SAC ¶199. This issue involves common questions because each Settlement Class Member has to prove the same elements to establish Defendants' liability and thus the low hurdle of Rule 23(a)(2) is satisfied. *See Zynga*, 2015 WL 6471171, at *6.

**3. The Proposed Settlement Class Representatives' Claims Are Typical**

A class may be certified if the claims of the representative parties are typical of the claims of the class. Rule 23(a)(3). "Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Plaintiffs' claims arise from the same events and alleged misconduct and are based on the same legal theories as those of the proposed Settlement Class. Specifically, Plaintiffs claim that: (a) Defendants violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 because

Defendants made false and/or misleading statements; (b) Plaintiffs and other Settlement Class Members purchased or otherwise acquired Revance securities artificially inflated because of Defendants' conduct and were damaged thereby; and (c) by proving Plaintiffs' own claims, they would prove the claims of the Settlement Class Members. *See, e.g.*, SAC ¶199. Thus, there is a sufficient nexus between Plaintiffs' and the Class's claims to satisfy Rule 23(a)(3).

### 4. The Proposed Settlement Class Representatives Are Adequate

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Plaintiffs have established their adequacy for the reasons in §I.A.1.

### 5. The Predominance and Superiority Requirements Are Satisfied

A class may be certified under Rule 23(b)(3) if the Court finds that: (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The predominance prong is satisfied because, as described above, the questions of law or fact common to the Settlement Class Members described above predominate over any individual questions. *See Zynga*, 2015 WL 6471171, at *7 (finding predominance satisfied when each class member purchased stock and suffered damages as a result).

The superiority prong is also satisfied because the relevant factors are met in this case. *Amchem Prods. v. Windsor*, 521 U.S. 591, 615-16 (1997) (providing that the following four factors should be considered with respect to "superiority": (i) class members' interest in individually prosecuting separate actions; (ii) the extent of any litigation already commenced by class members; (iii) the desirability of concentrating the litigation in the particular forum; and (iv) the difficulties in management of a class action).[8] Prosecution of this lawsuit on a class action basis will be more efficient than adjudication of the numerous individual shareholder claims because the shareholders are geographically dispersed and have relatively small claims.

---

[8] The fourth factor need not be considered because the proposed Settlement eliminates any manageability problems that may have existed. *See id.* at 620 (stating that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . .").

*See Verisign*, 2005 WL 7877645, at *9 ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."). Additionally, Plaintiffs and Lead Counsel have already invested significant resources thus far in preserving and prosecuting the claims asserted in the SAC. *See* §§I.A.2-3, I.A.5. Any additional individual litigation would simply be duplicative of their efforts. Certification is the superior method to facilitate the resolution of the Settlement Class's claims against Defendants because, absent certification, Defendants would not be able to obtain a Settlement Class-wide release and thus would have little incentive to enter into a settlement.

**6. The Faruqi Firm Is Adequate to Serve as Settlement Class Counsel**

"[A] court that certifies a class must appoint class counsel." Rule 23(g). Plaintiffs respectfully request that the Court appoint the Faruqi Firm as Settlement Class Counsel for the Settlement Class. The Faruqi Firm has, and will continue to, fairly and adequately represent the Settlement Class. As explained in §I.A.1, proposed counsel is knowledgeable about the applicable law, experienced in handling class actions, has performed substantial work in pursuing the claims and in reaching a settlement, and has committed the necessary resources to representing the Settlement Class. *See* Rule 23(g)(1)(A).

## II. THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED

Due process for class action plaintiffs requires that counsel provide "notice plus an opportunity to be heard and participate in the litigation[.]" *Epstein v. MCA, Inc.*, 179 F.3d 641, 649 (9th Cir. 1999). "For any class certified under Rule 23(b)(3), class members must be afforded the best notice practicable under the circumstances, which includes individual notice to all members who can be identified through reasonable effort." *Zynga*, 2015 WL 6471171, at *13. Rule 23(e) requires notice that describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015).

The Parties have agreed to use the traditional methods for notifying the Settlement Class Members: notification by mail, publication by wire service, publication in a national newspaper

focusing on investors, and on a dedicated website. The proposed Postcard Notice, which will be sent by U.S. mail to potential Settlement Class Members, has been carefully drafted to notify the Settlement Class of the Settlement's terms, the Settlement Class Members' rights in connection with the Settlement, the date of the Settlement Hearing, and the address for the dedicated website on which to obtain more information about the Settlement in compliance with Rules 23(c)(2) and 23(e), the PSLRA, and due process. For example, the Postcard Notice provides the most important information for Settlement Class Members, including: (i) the case caption; (ii) a description of the Settlement Class; (iii) the Settlement Hearing date; (v) the option to opt out of or object to the proposed Settlement; and (vi) the manner in which to obtain more information, including the settlement website which contains the Notice and Proof of Claim Form. *See, e.g.,* Stip. Ex. A-2.

The Summary Notice will be published in *Investor's Business Daily* and on *PR Newswire*. *See* Stip. Ex. A. These notice materials have been carefully drafted to notify the Settlement Class of the Settlement's terms, the Settlement Class Members' rights in connection with the Settlement, and the date of the Final Approval Hearing in compliance with Rule 23(c)(2) and 23(e), the PSLRA, and due process. *See* Stip. Exs. A-1, A-3.

This manner of providing notice represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process. *See, e.g.*, *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (approving notice by mail and publication to all reasonably identifiable class members as best practicable); *see also In re Blue Apron Holdings, Inc. Sec. Litig.*, 2021 WL 345790, at *3 (E.D.N.Y. Feb. 1, 2021) (postcard notice is considered adequate).

Accordingly, Plaintiffs respectfully request that the Court approve the Postcard Notice, Notice, Summary Notice, and Proof of Claim form and the procedures for their dissemination.

Defendants will provide Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715, notice and are solely responsible for doing so. Stip. ¶21. Within ten days of the filing of the Stipulation with the Court, Defendants will cause notice of the proposed settlement to be served upon the appropriate officials in compliance with CAFA's requirements.

## III. PROPOSED SCHEDULE OF EVENTS

As outlined in the proposed Preliminary Approval Order submitted herewith, the parties proposed the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for Revance to cause Lead Counsel to be provided with a list of record owners | 14 business days after entry of the Preliminary Approval Order (¶9)[9] |
| Deadline to mail the Notice and Proof of Claim to the list of record owners and publish them to the website ("Notice Date") | 21 calendar days after entry of the Preliminary Approval Order (¶¶10-11) |
| Deadline for publishing Summary Notice | 14 business days after the Notice Date (¶12) |
| Deadline for submitting Proofs of Claim | 100 calendar days from the Notice Date (¶20) |
| Deadline for filing the motion in support of final approval of the Settlement and the applications for attorneys' fees and expenses | 56 calendar days prior to the Final Approval Hearing (¶37) |
| Deadline for filing and serving proof of mailing and publication | 7 calendar days prior to the Final Approval Hearing (¶13) |
| Deadline for objections and exclusions | 28 calendar days prior to the Final Approval Hearing (¶¶25, 29) |
| Deadline for filing reply memoranda in response to any objections | 14 calendar days prior to the Final Approval Hearing (¶37) |
| Final Approval Hearing | 100 calendar days from the date of the Preliminary Approval Order (¶5) |

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order which will: (a) preliminarily approve the proposed Settlement; (b) approve the proposed form and manner of providing notice; (c) preliminarily certify the Settlement Class for settlement purposes; (d) preliminarily appoint Plaintiffs as Settlement Class Representatives and the Faruqi Firm as Settlement Class Counsel for settlement purposes; and (e) set a hearing date for the Final Approval Hearing.

Dated: August 10, 2026

**FARUQI & FARUQI, LLP**

By: _/s/ James. M. Wilson, Jr._

[9] All "¶__" references in this chart are to the Preliminary Approval Order (Stip. Ex. A).

James M. Wilson, Jr. (appearance *pro hac vice*)
Robert W. Killorin (appearance *pro hac vice*)
Email: jwilson@faruqilaw.com
Email: rkillorin@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

Lisa Omoto SBN 303830
E-mail: lomoto@faruqilaw.com
**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: 424-256-2884
Facsimile: 424-256-2885

*Attorneys for [Proposed] Class Representatives and [Proposed] Class Counsel for the [Proposed] Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 10, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses listed on the Electronic Mail Notice List.

Dated: August 10, 2026

By: *_/s/ James M. Wilson, Jr._*
James M. Wilson, Jr. (appearance *pro hac vice*)